## FRENCH *v.* SHOEMAKER.

1. Where the whole law of a case before a Circuit Court is settled by a decree, and nothing remains to be done, unless a new application shall be made at the foot of the decree, the decree is a final one, so far as respects a right of appeal.
2. Where there is nothing on the record to show to the court that the indemnity given by an appeal bond is insufficient, the presumption is that it is sufficient.
3. Where a party is perpetually enjoined and restrained by a decree of a Circuit Court, from *any proceeding whatever*, not in accordance with certain contracts which a complainant had applied to that court to make him, by injunction, observe, that court—though an appeal here has been taken within ten days, and an appeal bond with sufficient indemnity given,—may yet properly order the defendant to desist from a second

---

Fairfield, 422; Dorr *v.* The New Jersey Steam Nav. Co., 4 Sandford, 136; S. C, 1 Kernan, 485.

* Hepburn *v.* Ellzey, 2 Cranch, 445.

suit in another court of the United States to set aside the contract, just as above mentioned, passed on. And this although in such second suit new parties are introduced, whom the Circuit Court had held were not necessary parties to the proceeding there. Such an order is not a misconstruction by the Circuit Court of its own decree.

THESE were two motions by the opposite parties, in an appeal from a decree of the Circuit Court of the United States for the District of Virginia.

1. A motion on behalf of the appellee to dismiss the appeal for want of jurisdiction, on the ground of the decree's being interlocutory and not final.

2. A motion on behalf of the appellant for a supersedeas, or for any suitable order prohibiting the court from proceedings on the decree while the appeal was pending.

The case was thus:

In the year 1854, two persons, James S. French and Walter Lenox, subscribed for the whole stock of the *Washington and Alexandria* Railroad Company, then recently incorporated by the State of Virginia; French taking three-fourths and Lenox one-fourth, *and French being made President of the company*. The road was built. French and Lenox, however, spent very little money of their own in its construction, but raised large sums by borrowing. When, therefore, the road was built the company was seriously embarrassed Two deeds of trust had been executed in 1855, and in 1857 another deed was made to Lenox, as trustee, to secure bonds, issued to raise money for the purposes of the road.

The civil war broke out when the road was in this condition, and French and Lenox went South, and were disabled by the condition of the country and by the government's taking military possession of the road from asserting their title to the property.

During their absence, a proceeding was instituted in the Alexandria County Court for the removal of Lenox as trustee in the deed of trust to him, and this resulted in an order for such removal, and for the substitution of one Stewart as trustee in his place. The new trustee proceeded in alleged conformity to the deed of trust to sell the railroad.

Under the sale thus made, a new company was organized, which assumed the name of the Washington, Alexandria, *and Georgetown* Railroad Company; and the government having relinquished the road in 1865, this company took possession of it at once; and not long afterwards entered into a contract with the Adams Express Company in relation to the conveyance of express freight, and the furnishing by the latter of means to work the road. This contract did not prove satisfactory, and by consent of both parties, a lease for ten years was made to two persons, named Stevens and Phelps, in May, 1866; and in the following June, another contract for means of operation and for the conveyance of express freight was made for ten years with the Adams Express Company.

Litigation soon arose upon this lease and upon these contracts. One Davison, asserting himself to be a stockholder of the Washington, Alexandria, and Georgetown Railroad Company, filed his bill in the Alexandria County Court in November, 1866, alleging that the lease was made without authority, and in fraud of the rights of the stockholders, and praying that it might be set aside and annulled. The Adams Express Company filed its bill about the same time, in the Circuit Court of the United States for the District of Virginia, praying for the enforcement of its contract with the company, and with the lessees; and under that proceeding an order was made by the Circuit Court for the appointment of receivers of the road, who took possession.

The Adams Express Company was not a party to the suit in the State court, nor was the Washington and Alexandria Railroad Company a party to the suit in the Federal court.

The Washington and Alexandria Railroad Company describing itself as *that company by James S. French, its President,* had already in March, 1866 (the government having with the suppression of the rebellion, given up, as already said, its possession, and French and Lenox having returned from the South), filed its bill in the Alexandria County Court asserting its title to the road, charging fraud in the whole proceeding for the organization of the Washington, Alex-

andria, and Georgetown Railroad Company, and praying that it might be declared void, and that a decree might be made establishing its own original title to the road as unimpaired by that proceeding.

In this condition of conflicting claims, and with these and other suits pending, two instruments were executed with a view to adjust things between all the parties at issue; and who were the said French and Lenox, Stevens and Phelps, and one *Shoemaker*, representing the Adams Express Company. Two other persons, viz., Brent and Smith, also had an interest.

The transaction vested in Shoemaker the interest of French in the Washington and Alexandria Railroad Company as security to himself and the Adams Express Company for the repayment of the $5000 then advanced, and the sums to be thereafter advanced in payment of the liabilities of the company, and of the lessees incurred on account of the road, and as security to all the parties for the performance of the covenants contained in the agreement, and especially for the reorganization of the company upon the rendering of a decree by the said Alexandria County Court establishing its title to the road, and for the distribution of the stock of the company among the parties in the stipulated proportions. These instruments, which made what might be called a sort of settlement contract, were intended as an adjustment of controversies relating to the Washington and Alexandria Railroad Company, so far as the parties to it were concerned, and as an arrangement for means to liquidate its just liabilities, and put it into successful and profitable operation. The decree, on the rendering of which the contract was to be carried into effect, was rendered in the said Alexandria County Court on the 28th of August, 1868. It declared the sale by the trustee, Stuart, and the organization of the new company fraudulent, null, and void; and ordered that on execution of a bond in a sum specified, to account to creditors for the receipts of the road, it should be " restored " by the officers of the so-called new company " to the possession of the Alexandria and Washington Railroad Company, its

duly constituted officers and agents." At the time of this decree the road was in possession of the receivers appointed by the Federal court at the suit of Adams Express Company.

In this state of things thus far completed, Shoemaker filed a bill in the court below, the Circuit Court for Virginia, against French; and French then filed a cross-bill against him. The original bill, after stating the rendering of the decree contemplated by the settlement contract, as just above mentioned, stating also the alleged equities arising from the contract, and the action of the parties to it, except French, charged that notwithstanding French's conveyance, and notwithstanding that a meeting had been held of all the parties to the contract, to reorganize the road under the contract (he having been present), French, under color of the order of restoration, had executed a pretended bond in the sum specified in the order, as the bond required by the decree, and that he had ordered the clerk of the Circuit Court to issue a writ of possession ordering the restoration of the road and property of the company, and under color of this fraudulent and illegal proceeding had attempted to take possession of the road, notwithstanding that it was at the time in possession of the receivers of the Circuit Court at the suit of the Adams Express Company, represented by the complainant; charging further, that French was so reckless of his obligation to him, the complainant, Shoemaker, and so determined to prevent the execution of the reorganization of the company, that unless enjoined he would damage the interest of the complainant and the others irreparably. The bill prayed that French be enjoined from attempting to do any act as President of the said Alexandria and Washington Railroad Company, and from intermeddling with the road and property of the company, or with the parties to the agreement, or with the complainant in carrying out its provisions, or from holding any meeting for the reorganization of the company, or from taking any proceedings at law or in equity for that purpose, except by proceedings in the suit in which the bill was filed in the Circuit Court of the United States for Virginia, or by attending the meetings for the

purpose of such reorganization, and voting or using the interest he may have under the settlement, if he have any, for the quiet and proper object of the said meetings; *and that his said interest be sold by a commissioner of the court, for the payment of said sum of $5000, according to the practice of the court;* and that the complainant, in his own behalf, and as trustee of said parties to said agreement, have such other and further relief as his case and their interest might require.

The answer of French admitted the execution of the contract, and that he was then and for some time afterwards satisfied with it; but proceeded to allege circumstances of hardship and imposition under which he was induced to become a party to it, and various other matters supposed to show a want of equity in the complainant.

The matters set up in the answer were again set up in the cross-bill of French, together with other matter of complaint, as grounds for his prayer that the settlement contract might be annulled, and the parties to it be restrained from all attempts to enforce any pretended rights under it. *The point too was taken in the cross-bill, that Stevens and Phelps were necessary parties to the original bill.*

The answer of the original complainant to this bill denied every substantial allegation of fact on which relief against the contract was claimed.

The decree was thus made, Chase, C. J., presiding:

" This cause coming on to be heard upon the bill, answer, and replication, and upon the cross-bill, answer, and replication, and upon the proofs, and being maturely considered, the court is of opinion that the *equity of the case is with the complainant in the original bill*, and thereupon do order, adjudge, and decree that James S. French, the defendant in the original bill, be perpetually enjoined and restrained from any use of the name or title of the president of the Washington and Alexandria Railroad Company under any election to that office heretofore held, and from any action by himself or any attorney or agent to interfere with any proceeding for the reorganization of the said company under the contracts mentioned in said bill, and dated on the 6th of December, 1867, and *from any proceeding whatever not in accord-*

*ance with the said contracts*, without prejudice, however, to the right of the said French to the stock assigned to him by said contract, or to assert any claim he may have against said company reorganized under said contract, or against the said Shoemaker, or against the Adams Express Company, not in contravention of the said contract, or to pursue by proper proceedings in law or equity any claim he may have in respect to the distribution of stock made in and by said contract, founded upon the failure of consideration or other cause.

"It is further ordered, adjudged, and decreed, that the said defendant, French, pay the costs in this cause, and leave is given to either party to apply at the foot of this decree for such further order as may be necessary to its due execution, or as may be required in *relation to any matter not finally determined by it.*"

From this decree an appeal to this court was immediately and within ten days asked for by French, and allowed by the Chief Justice, "upon the defendant's giving bond with good and sufficient security in the sum of $500." The bond, &c., was given.

In this state of things the bill and cross-bill in the equity suit, on which the decree has just above been given, having been, as the reader will have observed, a proceeding *between French and Shoemaker alone*, and the objection to the bill for want of proper parties taken and overruled, French began a suit in the Supreme Court of the District of Columbia against all the parties to the settlement contract *except Shoemaker*, for the purpose of setting aside the agreement. His bill being demurred to because Shoemaker was not a party, and the demurrer being sustained, Shoemaker was added.

Hereupon, on the application of Shoemaker to the Circuit Court of Virginia, that court ordered French to dismiss his bill in the District, and to stop proceedings under pain of imprisonment. He dismissed his bill.

It was in this state of things that the two motions mentioned at the opening of the report (on page 87), came before this court.

I. ON THE FIRST MOTION, to wit, that of Shoemaker, the appellee, to dismiss the appeal, it was argued:

*In support of the motion,* that the decree was not final, because it had not touched the prayer for foreclosure of the mortgage for $5000, one important object of the bill.

Neither had it dismissed the cross-bill. Yet in *Ayres* v. *Carver,*[*] a decree was held not final on dismissal of a cross-bill the original bill being left. This was but a converse of that case.

That the decree was not meant to be final was shown by the language of the decree, which anticipated further action of the court in matters not finally disposed of.

*Contra,* as respected this motion, it was said that the subject not disposed of, to wit, the mortgage for $5000, was distinct from that which formed the substance of the decree, and that, in fact, the bill was multifarious in joining these two separate claims. The decree completely disposed of one of them, and was final as to that. That was enough.[†]

To what was said about the cross-bill not being dismissed, it was replied, that it had been in effect dismissed when on a cause declared to have been heard on bill *and* cross-bill, the equity was declared to have been with the complainant in the original bill.

The leave reserved was to apply on the foot of the decree, and plainly was meant for formal orders only. The Chief Justice, who made the decree with this reservation, allowed an appeal immediately; a proof that he did consider that he had made a final decree.

II. As to the second motion, for a supersedeas, or *for any suitable order prohibiting the court below* from proceeding, &c., it was argued—the parties reserving their position of parties moving—*in favor of the appellant,*

1. That while the merits of this case could not be fully considered on a motion, it was necessary to refer to the main points in the case in order to act on the motion. The agreement was not between French and Shoemaker alone, but

---

[*] 17 Howard, 591.

[†] Thomson *v.* Dean, 7 Wallace, 342, citing Forgay *v.* Conrad, 6 Howard, 201.

was signed by five other persons, to wit: Lenox, Stevens, Phelps, Smith, and Brent. These persons were so interested in the contracts that they were necessary parties to the suit. Now the objection for want of parties had been distinctly made in the cross-bill, on the hearing in the Circuit Court below. The decree nevertheless went the full length of setting up the contracts, and enjoined French "from any proceedings whatever not in accordance with" them. It was in effect an injunction against the Alexandria and Washington Railroad Company, which was no party to the record. And the effect of the order subsequently made, to stop proceedings in the court of the District, was to prevent the appellant from pursuing his remedy against the parties named, and to make the decree conclusive in their favor, although they were not parties to the proceeding in which it was rendered.

2. By the appeal taken and bond filed within ten days, the decree was suspended and the case removed to this court. No further proceedings as to that decree could be taken in the court below while the appeal was pending here. For any violation of the decree, the appellant was answerable to this court and not to the Circuit Court.

But, independently of the supersedeas thus claimed, this court had the right, under the 14th section of the Judiciary Act, "to issue any writ necessary to render its appellate jurisdiction effectual."*

The order of the Circuit Court placed a construction on the decree previously made which was unreasonable. It was in fact equivalent to a new decree, inasmuch as it extended its operation not only beyond the parties to the cause, but beyond the terms of the decree itself. If a court could do this, pending an appeal; if it had the power to construe the decree and enforce it by process of contempt in doubtful cases, then it was evident that the inferior court might evade the appellate jurisdiction, and use the decree for purposes which this court would not sanction. This

---

* Ex parte Milwaukee Railroad Co , 5 Wallace, 189.

court should either prohibit such proceedings altogether or should examine them when they were alleged to have taken place, in order to prevent wrong and oppression, such as appeared in this case.

*Contra.* The appeal cannot operate as a supersedeas because of the insufficiency of the bond. The bond is in the penalty of $500. A writ of error or an appeal is not a supersedeas unless bond be given in a sum sufficient to secure the whole amount of the judgment or decree, in case of affirmance.

But if there is a supersedeas this will not prevent the court below preventing a plain contempt of its decrees. Such a contempt was made by the suit in the Supreme Court of the District.

The argument of the other side is in fact an argument on merits, which are not now open to discussion.

*Mr. F. P. Stanton, for the appellant; Messrs. R. T. Merrick and G. W. Brent, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Accurate conclusions in motions like the present, involving important questions of practice, are essential to the correct administration of justice in all judicial tribunals exercising appellate powers, but they are especially so in this court, whether the case is brought here from a State court or a Circuit Court, as the jurisdiction of the court is special and must in every case be tested by the Constitution and the laws of Congress.

Considerable importance is attached in this case to the motion for a supersedeas as well as to the motion to dismiss the appeal, but the court, in view of the circumstances, will first examine the motion to dismiss, as it is in its nature preliminary, and if granted will render it unnecessary to examine the other motion.

On the sixteenth of November, 1868, the appellee filed a bill of complaint against the appellant in the Circuit Court of the United States for the District of Virginia, setting up

two written agreements therein described, and to which special reference is made as exhibited in the record. They are both of the same date. Without entering much into details, suffice it to say that one purports to be an assignment by the appellant to the appellee of all his right, title, interest, claim, and demand whatsoever in and to the property, stock, road, road-bed, franchise, and charter of the Alexandria and Washington Railroad Company, for two specific purposes. (1) To secure the payment to the appellee of the sum of five thousand dollars advanced by the appellee to the appellant. (2) To carry into effect the purposes and objects set forth in the other written agreement. Both agreements are signed by the appellant, and upon the back of the one given to secure the payment of the money advanced is the following agreement and consent: " We, the undersigned, do hereby agree and consent to the terms and conditions of the within assignment," which expressly recites that it was executed to accomplish the two purposes already described. Reference to the record will show that the assignment is signed by the appellant and that the indorsement is signed by all the other parties supposed by him to have an interest in the assigned property.

Special reference is made in the instrument of assignment to the purposes and objects set forth in the other written agreement, in which it is stipulated in substance and effect as follows: (1) That the appellant and Walter Lenox will convey all their right, title, and interest in that railroad company to a new corporation, to be formed as therein specified, or to devote all of that interest to the common benefit of the parties to the instrument, in the proportions therein specified, in case the old company should be revived. (2) That they agree to assign to the new company, when the parties shall actually organize the same, all their interest as lessees of the Washington, Alexandria, and Georgetown Railroad, or to hold the same for the exclusive use of the parties to the agreement, according to their respective interests. (3) That the appellee, for himself and the Adams Express Company, covenants to aid the new company, with

money and credits, to pay, settle, or compromise certain specified liabilities as set forth in the agreement. Certain other important conditions are also inserted in the instrument, but they are not material in this investigation.

Process was duly issued and served, and the appellant appeared and filed an answer setting up various defences to the merits of the claim made by the appellee. Subsequent to the filing of the answer the appellee filed the general replication, and the cause being at issue proofs were taken by both parties. Before the final hearing, however, the appellant filed a cross-bill, in which he insisted upon the defences set up in the answer, and also alleged that the other parties to the agreements were necessary parties to the bill of complaint. Due answer was made by the appellee to the cross-bill, and the appellant filed to the same the general replication.

Such being the state of the pleadings, the cause, on the twenty-first of June last, came on for final hearing " upon the bill, answer, and replication, and upon the cross-bill, answer, and replication, and upon the proofs," and the statement in the decree is that " the court is of the opinion that the equity of the case is with the complainant," and that the court " thereupon do order, adjudge, and decree that James S. French, the defendant in the original bill, be perpetually enjoined and restrained from any use of the name or title of the president of the Washington and Alexandria Railroad Company, under any election to that office heretofore held, and from any action by himself or any attorney or agent to interfere with any proceeding for the reorganization of the said company under the contract mentioned in said bill, &c., and from any proceeding whatever not in accordance with the said contracts, without prejudice," as therein recited. Omitting the qualifications stated in the recitals, the decree continues as follows: " It is further ordered, adjudged, and decreed that the said defendant, French, pay the costs in this cause."

Final decrees in suits in equity passed in a Circuit Court,

where the matter in dispute exceeds the sum or value of two thousand dollars exclusive of costs, may be re-examined in this court, but the act of Congress does not define what is meant by the phrase "final decree." Objection is made that the decree is not final because it does not in terms dismiss the cross-bill, but the court is of the opinion that the statement contained in the decree, that the equity of the case is with the complainant, by necessary implication disposes of the cross-bill as effectually as it does of the answer filed by the appellant to the original bill of complaint. Leave, it is true, is given to either party to apply, at the foot of the decree, for such further order as may be necessary to the due execution of the same, or as may be required in relation to any matter not finally determined by it, but it is quite apparent that that reservation was superadded to the decree as a precaution and not because the court did not regard the whole issue between the parties as determined by the decree. Such was doubtless the view of the Chief Justice who passed the decree, as the application for the appeal was made to him at the same term and was immediately granted without objection.

Several cases might be referred to where it is held that a decree of foreclosure and sale of mortgaged premises is a final decree, and that the defendant is entitled to his appeal without waiting for the return and confirmation of the sale by a decretal order, upon the ground that the decree of foreclosure and sale is final as to the merits, and that the ulterior proceedings are but a mode of executing the original decree.[*]

Unquestionably the whole law of the case before the court was settled by the Chief Justice in that decree, and as nothing remains to be done, unless a new application shall be made at the foot of the decree, the court is of the opinion that the decree is a final one, as it has conclusively settled all the legal rights of the parties involved in the pleadings.[†]

---

[*] Whiting *v.* Bank of the United States, 13 Peters, 15; Bronson *v.* Railroad, 2 Black, 524.

[†] Forgay *v.* Conrad, 6 Howard, 202; Thomson *v.* Dean, 7 Wallace, 342; Curtiss's Commentaries, § 188; Beebe *v.* Russell, 19 Howard, 283.

2. Beyond all doubt the appeal of the respondent in this case was allowed within ten days from the date of the decree, and the record shows that the bond to prosecute the writ to effect and answer all damages and costs if he fail to make his plea good was filed and duly approved within the same period, but it is denied by the appellee that the appeal operates as a supersedeas, because it is insisted that the bond given in the case is not in a sum sufficient to constitute indemnity for the whole amount of the decree.

Where the judgment or decree is for the recovery of money, not otherwise secured, the indemnity must be for the whole amount of the judgment or decree, including just damages for delay, and costs and interest on the appeal.*

But in all suits where the property in controversy necessarily follows the event of the suit, as in real actions, replevin, and in suits on mortgages, indemnity is only required in an amount sufficient to secure the sum recovered for the use or detention of the property and the other incidental items, as in cases where the judgment or decree is for money. What is necessary is that it be sufficient, and when it is desired to make the appeal a supersedeas, that it be filed within ten days from the rendering of the decree, and the question of sufficiency must be determined in the first instance by the judge who signs the citation, but after the allowance of the appeal that question as well as every other in the cause becomes cognizable here. It is therefore matter of discretion with the court to increase or diminish the amount of the bond and to require additional sureties or otherwise as justice may require.†

All that is required in a case where the writ of error is not a supersedeas is that the bond shall be in an amount sufficient    answer the costs in case the judgment or decree is affirmed. Nothing appears in the record to show that the indemnity given is insufficient, and inasmuch as nothing ap-

---

* Catlett *v.* Brodie, 9 Wheaton, 553; Stafford *v.* Union Bank, 16 Howard, 135; Same *v.* Same, 17 Id. 275.

† Rubber Co. *v.* Goodyear, 6 Wallace, 156; Rule 32; The Slaughterhouse Cases, 10 Wallace, 273; 1 Stat. at Large, 404.

pears to the contrary the court is of the opinion that it must be presumed that the amount is sufficient.

Appeals and writs of error are constituted a supersedeas in certain cases by virtue of the twenty-third section of the Judiciary Act, when the conditions there prescribed are fulfilled. Where those conditions are complied with the act of Congress operates to suspend the jurisdiction of the subordinate court and stay execution pending the writ of error or appeal, and until the case is determined or remanded.*

Power to issue a supersedeas to a decree in a subordinate court does not exist in this court where the appeal was not taken and the proper bond given within ten days from the date of the order, except where an appeal was duly taken within ten days, and the aggrieved party is obliged to take a second appeal in consequence of the clerk below having neglected to send up the record in season, or where the granting of such a writ becomes necessary to the exercise of the appellate jurisdiction of the court, as where the subordinate court improperly rejected the sureties to the bond because they were not residents of the district.†

Appellate power in the controversy under consideration is conferred upon this court, and it is clear that this court may issue a supersedeas in such a case whenever it becomes necessary to the exercise of its appropriate jurisdiction.‡

Attention will now be called to the grounds of the motion for a supersedeas, as shown in the affidavit of the appellant. He states that he filed a bill in equity in the Supreme Court of this district against Oscar A. Stevens, George W. Brent, W. Jackson Phelps, Richard T. Merrick, J. Dean Smith, and Walter Lenox; that the respondents demurred to the bill on the ground that the appellee before the court was a necessary party respondent in the case, and that the court

---

* Hogan *v.* Ross, 11 Howard, 295.

† Hogan *v.* Ross, 11 Howard, 296; Ex parte Milwaukee Railroad Co., 5 Wallace, 188; Stockton et. al. *v.* Bishop, 2 Howard, 74; Hardeman *v.* Anderson, 4 Id. 640; Wallen *v.* Williams, 7 Cranch, 279; Saltmarsh *v.* Tuthill, 12 Howard, 389.

‡ 1 Stat. at Large, 81; Stockton et al. *v.* Bishop, 2 Howard, 75.

where the bill was pending sustained the demurrer. Wherefore the appellant here amended his bill, and made the appellee a party respondent.

Consequent upon those proceedings, as the affiant states, the Circuit Court for the District of Virginia laid a rule on him requiring him to appear in that court, on a day named in the rule, to show cause why he should not be fined and attached for the acts set forth in the petition, and charged therein to be in violation of the aforesaid order and decree of the court below in this case; that he appeared and showed cause as required, but that the court there being of opinion that he had violated the decree in the case before the court by filing his bill in equity in the Supreme Court of this district, ordered that he forthwith dismiss the same and cease all proceedings under the same on pain of imprisonment, and that he, having no alternative but to go to jail or to submit to the order of the court, chose the latter, and dismissed his bill of complaint. His views are that the Circuit Court erred in passing that order, and that that court gave an erroneous construction to the decree entered by the Chief Justice in the case, making it more comprehensive than its language will warrant, and he moves this court to issue a supersedeas or other suitable order to correct those errors.

Suppose the theory of the appellant is correct that the circuit judge in construing the decree gave it a scope beyond its legitimate meaning, very grave doubts are entertained whether this court, under the present motion, could afford the appellant any remedy, as the facts supposed would not show that anything had been done to defeat or impair the appellate jurisdiction of this court. Acts void in themselves may be done by the Circuit Court outside of the jurisdiction of the Circuit Court which this court cannot re-examine. Authority does not exist in this court to issue a supersedeas, except in cases where it is necessary to the exercise of its appellate jurisdiction, but the court is not inclined to rest its decision in this case upon that ground, as we are all of the opinion that the circuit judge did not err in his construction of the order and decree enjoining the appellant in that de-

cree. He is perpetually enjoined and restrained from any use of the name or title of the president of the company under any election to that office heretofore held, and from any action, by himself or any attorney or agent, to interfere with any proceeding for the reorganization of the company under the contracts, or *from any proceeding whatever not in accordance with the said contracts.* More comprehensive language could hardly be employed, and argument can hardly make it plainer or add anything to its force or effect.

<div align="right">BOTH MOTIONS DENIED.</div>