In the Matter of Josiah S. Stafford and Jeannette Kirkland, his Wife, Appellants, v. The Union Bank of Louisiana.

Where an appeal was taken from a decree in chancery, which decree was made by the court below during the sitting of this court in term time, the appel'ant is allowed until the next term to file the record; and a motion to dismiss the appeal, made at the present term. before the case has been regularly entered upon the docket, cannot be entertained, nor can a motion to award a *procedendo.*

This court, however, having a knowledge of the case, will express its views upon an important point of practice.

Where the appeal is intended to operate as a *supersedeas,* the security given in the appeal bond must be equal to the amount of the decree, as it is in the case of a judgment at common law.

The two facts, namely, first that the receiver appointed by the court below had given bond to a large amount, and second, that the persons to whom the property had been hired had given security for its safe keeping and delivery, do not affect the above result.

The security must, notwithstanding, be equal to the amount of the decree.

A mode of relief suggested.

This was an appeal from the District Court of the United States for the State of Texas.

It will be seen, by a reference to 12 How. 327, that this case was formerly before this court, and that the decree of the court below (dismissing the bill filed by the Union Bank) was reversed.

In the execution of the mandate of this court, the District Court of Texas passed a decree on the 25th of February, 1854, from which Stafford and wife appealed. *Mr. Hale* and *Mr. Coxe,* on behalf of the Union Bank, moved to dismiss the appeal, for the following reasons: —

This motion is made to dismiss the appeal in this cause, and to award a *procedendo* to the District Court, on the ground that the appeal bond given by the appellants is not sufficient to stay the execution of the decree.

The cause was originally commenced by the Union Bank of Louisiana against Josiah S. Stafford and wife, in the District Court for the District of Texas, for the purpose of foreclosing a mortgage on certain negro slaves. A decree having been rendered by the District Court against the complainant dismissing the bill, an appeal was taken to this court; and at the December term, 1851, the decree of the District Court was reversed, and the cause remanded, with directions to that court to enter a decree in favor of the complainants. Union Bank of Louisiana *v.* Stafford and Wife, 12 How. 327, 343. No term of the District Court was held until July, 1853, when some objections being raised by the defendants to the proposed form of the decree, and to the report of the master on the receiver's accounts, the court took the whole matter under consideration until the next term. The objections to the master's reports having been waived, a final decree was rendered on the 25th of February, 1854, by which it was directed that the sums accruing from the hire of the slaves in the custody of the receiver, *pendente lite*, amounting to $25,379.39, should be paid by the receiver to the complainant, and credited on the total amount due by the defendants ; and that in case the defendants failed to pay over the balance remaining due after such credit, amounting to $39,877.13, on the first day of July, 1854, they should be foreclosed of their equity of redemption, and the master should seize and sell the mortgaged slaves at public auction, on the 3d of the same month, after giving three months' notice by advertisement of the time, place, and terms of sale, and should pay to the complainant out of the proceeds of the sale the foregoing sum of $39,-877.13, in satisfaction of the debt.

It appears, then, as well by the decree as by the report of the master, which was confirmed, that on the first day of July, 1854, when the foreclosure was to take effect, the debt, interest, and costs, due to the complainant, would amount to $65,256.52.

On the 7th of March, 1854, the tenth day after the entry of the above decree, the defendants prayed an appeal, and the following order was made by the court:

" On this day came the defendants, by their counsel, and prayed an appeal to the next term of the Supreme Court of the United States, to be held in Washington City, on the first Monday in December next, from the decree of the court rendered in favor of complainants against defendants ; and to them it is granted, upon condition that the defendants enter into a good

and sufficient bond, with good and sufficient surety in the penal sum of ten thousand dollars, conditioned that they prosecute their appeal with effect, and answer all damages and costs, if they fail to make their plea good. And thereupon the defendants, in open court, tendered a bond with L. C. Stanley, Patrick Perry, and William H. Clark, as sureties in the sum of ten thousand dollars, and the court having inspected the bond, and being satisfied it is in conformity to law and the order of the court herein, and that the sureties are good and sufficient, it is now ordered that the bond be approved and filed. It is ordered to be entered that the bond of appeal taken and filed in this cause operates as a *supersedeas* to the decree of the court."

On the same day, the appeal-bond referred to in the order was filed. The complainant objected to the bond being received to supersede or stay the decree, because the penalty was much less than the amount of the decree, and was wholly insufficient, but this objection was overruled.

On the 11th of March, 1854, notice was given to the defendants and their counsel that the present motion would be made, and this notice, with the acknowledgment of service, is herewith filed.

This motion is similar to that presented to this court in the case of Catlett *v.* Brodie, 9 Wheat. 553. The act of March 3, 1803, adopts in appeals the same rules that are applied to writs of error, (The San Pedro, 2 Wheat. 132,) and the 22d section of the Judiciary Act provides that " every justice or judge signing a citation or writ of error as aforesaid, shall take good and sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs, if he fails to make his plea good." In the case above cited, it is said, " It has been supposed at the argument that the act meant only to provide for such damages and costs as the court should adjudge for the delay. But our opinion is, that this is not the true interpretation of the language. The word ' damages' is here used not as descriptive of the nature of the claim upon which the original judgment is founded, but as descriptive of the indemnity which the defendant is entitled to, if the judgment is affirmed. Whatever losses he may sustain by the judgment's not being satisfied and paid, after the affirmance, these are the damages which he has sustained, and for which the bond ought to give good and sufficient security. Upon any suit brought on such bond, it follows of course, that the obligors are at liberty to show that no damages have been sustained, or partial damages only, and for such amount only is the obligee entitled to judgment."

This language applies to the present case.

It was, however, urged with success in the District Court,

12 *

that inasmuch as the receiver had given two bonds, each in the penalty of twenty thousand dollars, for the faithful discharge of his duties, and as the mortgaged slaves were in the possession of hirers, who had also given bonds in the joint penalty of eighty thousand dollars, for the safe keeping and delivery of such slaves, the complainant had no right to require any further security from the defendants than sufficient to cover the special damages which might be imposed by this court for delay. This conclusion is directly opposed to the reasoning of the court in Catlett v. Brodie. It is evident that, notwithstanding the bonds given by the receiver and the hirers, the complainant is exposed by the appeal to the danger of losing the whole of the debt. The sureties on these bonds may become insolvent; the money in the hands of the receiver may be squandered; the slaves may die or run away. And, in the language of the court: Whatever losses the complainant may sustain, these are the damages which he has sustained, and for which the bond ought to give good and sufficient security. Indeed, if the construction put upon the act by this court is applicable in any case, it must be in all, and no special circumstances can constitute an exception.

It may be objected that this motion cannot be entertained, at this time, because the appeal has been taken to the next regular term. But neither the acts of Congress which regulate practice in this court, nor the rules adopted for its government, imply that a motion of this kind cannot be made before the cause is required to be docketed. On the contrary, it is a well established principle that, at the moment of the appeal, and by that act alone, the cause is virtually removed to this court; and the jurisdiction thus vested may, of course, be exercised generally. Wylie v. Coxe, 14 How. 1. Every consideration would seem to induce the action of the court on motions of this character — the urgency of the case — the injury sustained by the appellee — the delay of justice — the danger of renewed and vexatious appeals; and in no instance can stronger reasons be offered than in this, where the amount of the appeal bond is but ten thousand dollars, and the debt is sixty-five thousand; and where the decree from which the new appeal is prayed, is in exact conformity with the former mandate of this court.

But if there would be any objection to the dismissal of the appeal at this time, there can be none to the award of a *procedendo* to the court below, to enforce the decree by the issuance of an order of sale. The District Court has directed the stay of all proceedings; and if such a result was not the lawful consequence of the appeal, this court must be competent to require the execution of what is, in fact, nothing but its own decree.

Stafford et al. *v*. The Union Bank of Louisiana.

Mr. Justice M'LEAN delivered the opinion of the court.

This is an appeal from the District Court of Texas, and a motion is made to dismiss it, on the ground that security has been given in the sum of ten thousand dollars only, when the sum decreed to be paid was sixty-five thousand dollars. And a *procedendo* is prayed, commanding the District Court to execute the decree.

Notice of this motion was acknowledged by the counsel for the appellant the 11th of March, 1854.

As the appeal was taken since the commencement of the present term, the appellant is not bound to file the record until the next term.

By the decree in the District Court, a mortgage on a large number of slaves, to secure the payment of a debt due to the Union Bank of Louisiana, was foreclosed. A receiver having been previously appointed, who hired out the slaves and received the hire, he was directed by the decree to pay to the bank the sum of twenty-five thousand three hundred and twenty-nine dollars and thirty-nine cents, moneys in his hands, and that the residue of the money due, amounting to the sum of thirty-nine thousand eight hundred and seventy-seven dollars and thirteen cents, should be paid on the first day of July next, and if not so paid, that the slaves should be seized and sold.

On the 7th of March, 1854, the tenth day after the decree was entered, the defendants prayed an appeal, which was granted, and on the same day a bond was given in the penal sum of ten thousand dollars, as required by the court.

As the appeal has not been regularly entered on the docket, and as the appellant is not bound to enter it until next term, a motion to dismiss it cannot be entertained. But as the record is before us, which states the facts on which the motion is founded, the court will suggest their views of the law, in regard to an important point of practice.

The act of 1803 places appeals in chancery on the same footing as writs of error. And in the case of Catlett *v*. Brodie, 9 Wheat. 553, this court held, that security must be given on a writ of error, to operate as a *supersedeas* for the amount of the judgment. By the act of 12th December, 1794, when a stay of execution is not desired, security shall be given only to answer costs.

A motion was made, in the District Court, to dismiss the allowance of the appeal, on the ground that security in the amount of the decree had not been given. This was opposed by the counsel of the appellant, and it was alleged, as the receiver had given two bonds, each in the penalty of twenty thousand dollars, for the faithful discharge of his duties, and as the

mortgaged slaves were in possession of persons who had hired them, who had given bonds in the joint penalty of eighty thousand dollars, for the safe keeping and delivery of the slaves, that no further security, under the statute, ought to be required to entitle the appellant to a *supersedeas* against the decree. The court overruled the motion.

The decision of this court, in the case above cited, was, that the words of the act, "sufficient security that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs, if he fails to make his plea good," do not refer to "the nature of the claim upon which the original judgment is founded, but that they are descriptive of the indemnity which the defendant is entitled to, if the judgment be affirmed." And the court further say, "whatever losses he, the defendant in error, may sustain by the judgment not being satisfied and paid after the affirmance, these are the damages which he has sustained, and for which the bond ought to give good and sufficient security."

If this construction of the statute be adhered to, the amount of the bond given on the appeal must be the amount of the judgment or decree. There is no discretion to be exercised by the judge taking the bond, where the appeal or writ of error is to operate as a *supersedeas.* This rule was established in 1817, and it has been adhered to ever since.

The hardship of this rule, on the appellant, is more imaginary than real. Suppose the appellant had given ample personal security on the original obligation for the payment of the money, and the sureties were sued with the principal, would they be excused from giving bail on an appeal or writ of error, as the act requires? And how does such a case differ from the one before us, where mortgage has been given on personal property.

If the receiver has given security, in forty thousand dollars, faithfully to pay over the money in his hands; and if those persons who employed the slaves have given bond in eighty thousand dollars, for the safe keeping and delivery of them, and the sureties are good, the appellant can have no difficulty in giving the security on his appeal, to the amount of the decree in the District Court. It is true the property is taken out of his possession and control, but it is in possession of persons who gave bonds for its safe keeping and delivery when required, a part of it in payment of the decree, and the residue to be sold in satisfaction of the balance of the decree. In this condition of the property, if the transaction be *bonâ fide,* (and it must be presumed to be fair, as the arrangement was made under the order of the court,) the responsibility on the appeal bond, can be little

Stafford et al. *v.* The Union Bank of Louisiana.

more than nominal. The state of the property affords more safety to the security on the appeal bond than if the property and money were in possession of the appellants, and under their control. A double mortgage is on the property, that it shall be faithfully applied to the payment of the decree.

The appeal is for the benefit of the appellant. A decree in the District Court has been entered against him, and there is, in the custody of the law, a sufficient amount of money and property to pay the amount decreed. An appeal suspends the payment some one or two years, and as this is done for the benefit of the appellants and at their instance, is it not equitable that the risk should be provided for by them? The law has so decided, by requiring security to be given to the amount of the decree, without reference to the nature of the suit. The provision of the act, as construed by this court, is not a matter over which the court can exercise a discretion. The language is mandatory, and must be complied with. We can know nothing of the responsibility of the receiver or of the hirers of the slaves, nor is it proper that we should inquire into their circumstances and the responsibility of the sureties, with the view of substituting them for the security on the appeal, which the law requires.

For the reasons stated, the court cannot dismiss the appeal, nor award a *procedendo*. A more appropriate remedy would seem to be a rule on the district judge, to show cause why a *mandamus* should not be issued; but this can be done only on motion.

Mr. Justice CATRON.

The case was decided in the District Court, in March last, and during the present term of this court, and an appeal taken to our next term; consequently the cause is not here, nor have we any power to dismiss it. The motion to dismiss must therefore be overruled. But I do not agree to the opinion expressed by a majority of my brother judges, advising the appellees what course to pursue against the district judge: First, Because we have no case before us authorizing such an expression of opinion; and I am opposed to a mere dictum attempting to settle so grave a matter of practice. And Secondly, My opinion is that the statute referred to does not govern a case in equity, where property is pursued under a mortgage, and the mortgaged property, at the complainant's instance, has been taken into the hands of the court, and so remains at the time of the appeal.

If the property, from its perishable nature, had been by interlocutory decree converted into money, and this was in court,

then, I think, no security to cover its contingent loss should be required; and here twenty-five thousand dollars has been earned, previous to the suit, by the mortgaged slaves, and is in court.

That this mortgagor is stripped of his property, and cannot give security for so large an amount, is manifest, and to construe the act of Congress as if this was a simple judgment at law, would operate most harshly.

*Motion overruled.*