## KOUNTZE *v.* OMAHA HOTEL COMPANY.

## OMAHA HOTEL COMPANY *v.* KOUNTZE.

1. An appeal bond in an ordinary foreclosure suit in a court of the United States does not operate as security for the amount of the original decree ; nor for the interest accruing thereon pending the appeal; nor for the balance due after applying the proceeds of the mortgaged premises; nor for the rents and profits, or the use and detention of the property pending the appeal: but only for the costs of the appeal, and the deterioration or waste of the property, and perhaps burdens accruing upon it by non-payment of taxes, and loss by fire if it be not properly insured.  *Quære*, Is its mere depreciation in market value any cause of recovery on the bond.

2. An appeal bond in such a suit, instead of following the statutory requirement, "that the appellant shall prosecute his appeal to effect, and, if he fail to make his plea good, shall answer all damages and costs," superadds the words that he shall "pay for the use and detention of the property covered by the mortgage in controversy during the pendency of the appeal."   In an action on the bond, — *Held*, that these words must be rejected, and the bond construed as having its ordinary and proper legal effect, the judge taking it having no right to exact such an addition to the condition of an appeal and *supersedeas.*

3. This case distinguished from those in which official bonds, and bonds given to the government for the purpose of enjoying some office or privilege, have been sustained as contracts at common law.

ERROR to the Circuit Court of the United States for the District of Nebraska.

The case is stated in the opinion of the court.

*Mr. James M. Woolworth* for Kountze.

*Mr. John I. Redick, Mr. George E. Prichett,* and *Mr. Jeremiah S. Black, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action on an appeal bond given for *supersedeas* of execution on a decree of foreclosure rendered by the Circuit

Court for the District of Nebraska, and appealed to this court and affirmed; and the question is as to the measure of damages to be recovered on said bond.

The foreclosure suit was brought to raise the amount due on certain bonds of the Omaha Hotel Company out of certain land and premises situated in the city of Omaha, which had been mortgaged by the company to secure the payment thereof. A decree was made on the 8th of May, 1875, by which it was ordered that the mortgaged premises be sold and the proceeds applied to pay the debt, after paying costs of sale and insurance and taxes accruing in the mean time. The defendants appealed, and, to obtain *supersedeas* of execution, gave the appeal bond which is the subject of the present controversy. The bond was in the penalty of $50,500, and after reciting the decree and appeal was conditioned as follows: " Now, the condition of the said obligation is such that if the said Omaha Hotel Company shall duly prosecute said appeal to effect, and pay said Jeptha H. Wade, James W. Bosler, Thomas Wardell, John A. Creighton, administrator of the estate of Edward Creighton, deceased, Andrew J. Poppleton, Augustus Kountze, Herman Kountze, and Henry W. Yates, their executors, administrators, or assigns, for the use and detention of the property covered by the mortgage in controversy in this suit, during the pendency of said appeal, and the costs of the suit, and just damages for delay, and costs and interest on said appeal, if it fails to make good its plea, this obligation shall be void; otherwise to remain in full force and virtue."

The decree being affirmed and the premises sold, the proceeds were found to be insufficient to satisfy the debt, to the amount of $88,480.85; and for this deficiency a decree was rendered against the Omaha Hotel Company, and an execution issued, which was returned unsatisfied.

Thereupon the present suit was brought on the appeal bond, and the plaintiffs by their petition claimed the entire penalty and interest on the facts above stated and on the ground that the company was insolvent, that, pending the appeal, the property had depreciated in value $30,000, and that the use and detention of it was worth $30,000 more. The defendants, in their answer, averred that they had kept the property in good

repair at a large expense, had paid all the taxes upon it, and had kept it insured for the benefit of the bondholders to the amount of $100,000 ; and that instead of depreciating, it was worth much more when the sale was made, than it was at the time of the original decree. The jury, by a special verdict, found that the rental value of the property, pending the appeal, with interest to the time of trial, was $44,838.67, and that the expenses paid by the defendants for taxes, insurance, and repairs, with interest thereon, was $26,082.71 ; that the value of the property in May, 1875, was $92,500, and in April, 1878, $139,000 ; that in May, 1875, it would have sold at master's sale for $62,000 [whereas it sold in 1878 for $120,-000]; that the interest on the decree pending the appeal was $58,870.25 ; and that the penalty of the bond, with interest from July 11, 1878, to the time of the trial, amounted to $57,750 ; and that the costs of the original suit unpaid by the defendants was $530.

The court rendered judgment in favor of the plaintiffs for $19,735.93, being the difference between the rental value of the property pending the appeal, and the sums expended by the defendants for taxes, insurance, and repairs, allowing interest on both sides ; with the addition of the item of $530 costs unpaid by the defendants, and interest from the time of trial to the date of the judgment.

Both parties brought writs of error.

The plaintiffs now contend that they ought to have had judgment for the entire penalty of the bond, because, first, the bond expressly provides that the Omaha Hotel Company shall pay for the use and detention of the property pending the appeal, as well as costs and just damages for delay, which greatly exceeds the penalty ; secondly, if the bond is to be limited in effect to the terms of the statute prescribing a bond, the damages are still greater than the penalty, its legal effect being to secure, to the extent of the penalty, 1, payment of the whole decree beyond what may be produced by the sale of the property ; 2, the interest accruing pending the appeal, which alone exceeds the penalty ; 3, the value of the use and detention of the property pending the appeal.

The defendants contend that judgment should have been given for them.

The appeal bond sued on in this case was given under the requirement of sect. 1000 of the Revised Statutes, which declares that every justice or judge signing a citation or any writ of error shall, except in cases brought up by the United States, &c., take good and sufficient security that the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, shall answer all damages and costs, where the writ is a *supersedeas* and stays execution, or all costs only where it is not a *supersedeas* as aforesaid. Sect. 1007 gives the effect of a *supersedeas* to a writ of error where such a bond as above described is given, and the writ is sued out and filed in proper time. Sect. 1010 declares that, where judgment is affirmed, the court shall adjudge to the respondent in error just damages for his delay, and single or double costs, at its discretion. Sect. 1012 declares that appeals from the Circuit Courts, &c., shall be subject to the same rules, regulations, and restrictions as are or may be prescribed in law in cases of writs of error.

These enactments are substantially a reproduction of like clauses in the Judiciary Act of 1789, as regards writs of error, and of the act of 1803, as regards appeals. The material words are the clause in the bond which declares. "*that the plaintiff in error [or appellant] shall prosecute his writ to effect, and, if he fail to make his plea good, shall answer all damages and costs.*" The scope and effect of this phrase, as applied to cases like the present, are the principal point in controversy. The bond sued on has an additional phrase, not required by the law, the effect of which will be separately considered.

By the common law a writ of error, without any security, was of itself a *supersedeas* of execution from the time of its allowance or recognition by the court to which it was directed; and even before, if the defendant in error had notice of it; or, in the Common Pleas, from the time of its delivery to the clerk of the errors of that court, whose business it was, amongst other things, to prepare the returns. 1 Tidd's Pract. 530, 1145; Impey's Pract. C. P. 16; Petersd. Abr., tit. Error, I. (H. a.). The presentation of the writ issuing from the Supe-

rior Court stopped all further proceedings except such as
were incidental to a compliance with its command to certify
the record.    But as writs of error came to be sued out for the
purpose of delay, various acts of Parliament were passed, re-
quiring security in certain cases, in order that the writ might ·
operate as a *supersedeas.*    First, without referring to a statute
in the time of Elizabeth, the statute of 3 James I., c. 8, declared
that no execution should be stayed or delayed, upon or by any
writ of error, or *supersedeas* thereon, for the reversing of any
judgment in debt upon a single bond, or a bond with condition
for the payment of money only, or in debt for rent, or upon
any contract, unless the plaintiff in error, with two sufficient
sureties, should first be bound to the plaintiff in the judgment,
" by recognizance, in double the sum recovered by the former
judgment, to prosecute the writ of error with effect; and also
to satisfy and pay, if the said judgment should be affirmed, or
the writ of error non-prossed, all and singular the debts, dam-
ages, and costs, adjudged upon the former judgment; and all
costs and damages to be awarded for the delaying of execu-
tion."    This statute was specific as to the cases in which bail
in error (as it was called) was required, and it was frequently
held that it could not be required in any other cases.    2 Sel-
lon's Pract. 367–374; 2 Tidd, 1150.    Subsequently by the
statute of 13 Car. II., c. 2, as enlarged by 16 & 17 Car. II.,
c. 8, the same recognizance was required to stay execution in
all personal actions in which a judgment was rendered upon a
verdict, and in most cases double costs were given in case the
judgment was affirmed; and in writs of error upon judgment
after verdict in dower and ejectment it was provided that exe-
cution should not be stayed unless the plaintiff in error should
be bound to the plaintiff, in such reasonable sum as the court
below should think fit, with condition, that if the judgment
should be affirmed, or the writ of error discontinued, in default
of the plaintiff in error, or he should be nonsuited therein,
that then he should pay such costs, damages, and sum or sums
of money as should be awarded upon or after such judgment
affirmed, discontinuance, or nonsuit; and to ascertain the sum
and damages to be awarded, it was provided that the court
should issue a writ of inquiry as well of the mesne profits as

of the damages by any waste committed after the first judgment in dower or ejectment, and give judgment therefor and for costs. This was the form in which the law stood for more than a century prior to our Revolution, and is believed to have generally prevailed in this country either by force of the English statutes, or similar statutes adopted by the Colonies themselves down to the time of the passage of the Judiciary Act by Congress in 1789. See 1 Rev. Laws of N. Y. (1813), p. 143, act of 1801; Acts of New Jersey, Feb. 1, 1799, and Feb. 28, 1820, Elmer's Dig. 159, 160; Act of Maryland, 1713, c. 4, 1 Kilty's Laws; and Alexander's British Statutes in force in Maryland, 16 & 17 Car II., c. 8. In Virginia, by the act of 1788, it was provided that before granting any appeal from a county to a district court, or issuing any writ of error or *supersedeas*, the party praying the same should enter into bond with sufficient security, in a penalty to be fixed by the court or judge, with condition to pay the amount of the recovery, and all costs and damages awarded, in case the judgment or sentence should be affirmed; and the damages were fixed at ten per cent per annum upon the principal sum and costs recovered in the inferior court; and the same provisions were applied to appeals and writs of error to the court of appeals. By the act of 1794, on appeal from a decree in equity to the High Court of Chancery, the condition of the appeal bond required was, to satisfy and pay the amount recovered in the county court, and all costs, and to perform in all things the decree, if the same should be affirmed. Laws of Virginia, ed. 1814, pp. 87, 115, 448. In Massachusetts, as appears by an early case (1804), a *supersedeas* was granted upon the plaintiff in error giving bond to respond all damages and costs in case the judgment should be affirmed. *Bailey* v. *Baxter*, 1 Mass. 156. In Pennsylvania, where the judgment was affirmed upon a writ of error, the execution included the interest from the date of the original judgment. *Respublica* v. *Nicholson*, 2 Dall. 256.

It is thus seen that, in the case of money judgments, bail in error was required to secure, 1, the amount of the original judgment; 2, the costs and damages occasioned by the delay of execution. In the case of dower and ejectment, where the

main thing in controversy was land, bail was required to secure only such costs, damages, and money as should be awarded after affirmance of judgment, for mesne profits and waste pending the appeal.

In relation to money judgments, a long train of decisions in England shows that the damages for delay for which the bail in error were to respond were the interest on the sum recovered below from the day of signing final judgment to the time of affirmance, and costs in the writ of error, and in some cases double costs. In the Exchequer Chamber, when double costs, were recoverable, the court exercised its discretion whether to allow interest or not, it not being allowed as a matter of course; but interest was only allowed where the original demand was one that drew interest, and not in cases of mere tort or unliquidated damages. Tidd, 1182, 1183. In the House of Lords, they gave large or small costs in their discretion, according to the nature of the case, and the reasonableness or unreasonableness of litigating the judgment of the court below. Id. 1184.

We have no reason to believe that the rule of damages for delay on a recognizance, or bond in error, was materially different in this country, in 1789, from that which prevailed in England. The statutes being substantially the same, undoubtedly the same rule prevailed in administering them.

On appeals in chancery the practice in England, in case of an appeal from the Master of the Rolls to the Lord Chancellor, was for the party appealing to deposit £10, to be paid to the other party if the decree was not materially varied, and he was also required to pay the costs of the appeal; and on appeal from the Court of Chancery to the House of Lords, the appellant was obliged to make a deposit of £20, and give security by recognizance in the sum of £200, to pay such costs to the defendant in the appeal, as the court should appoint, in case the decree should be affirmed. Harrison's Pract. in Chancery, ed. Newland, pp. 342, 349. In 1810 these amounts were doubled. Smith's Ch. Pr. 27, 44. If a party wished to file a bill of review, the general rule was that he must perform the decree before filing his bill.

Such being the rules prevailing on the subject when the act of 1789 was passed, which required the plaintiff in error to give security "to prosecute the writ of error to effect, and to answer all damages and costs if he failed to make his plea good," the extremely general terms of the law are noticeable. According to the English law, the terms "all damages and costs" would only cover the damages for delay, security for the original judgment being expressly provided for by separate words; but the act of Congress does not say "damages for delay," but generally "all damages and costs," without any specific provision for the original judgment; and the bond is required in all cases, and not merely on error to money judgments and judgments in dower and ejectment; and not merely in cases at law, but in cases of equity also; for the writ of error was the process of review prescribed by the Judiciary Act both at law and in equity; and when appeals were allowed in the latter by the act of 1803, they were subjected to the same rules and conditions as writs of error. The only guide, or hint of guidance, given by the Judiciary Act as to what damages were to be awarded on a bond in error, other than what might be deduced by analogy from the English and State laws, is an expression contained in the twenty-third section, where it is said that if, upon a writ of error, the Supreme or Circuit Court shall affirm a judgment or decree, they shall adjudge or decree to the respondent in error *just damages* for his delay, and single or double costs at their discretion. So that, as the result of the whole, the matter was left very much at large, and subject to the regulation of the courts, and such analogies as existing laws afforded.

The act of Dec. 12, 1794, c. 3, declares that the security to be required on the signing of a citation on any writ of error which shall not be a *supersedeas* and stay execution, shall be only to such an amount as, in the opinion of the justice or judge taking the same, shall be sufficient to answer all such costs as, upon an affirmance of the judgment or decree, may be adjudged or decreed to the respondent in error. The substance of this act is reproduced in the Revised Statutes; but it sheds no light on the question of damages as distinguished from mere costs.

The Supreme Court at an early day (February Term, 1803) adopted the two following rules : —

" 1. In all cases where a writ of error shall delay the proceedings on the judgment of the Circuit Court, and shall appear to have been sued out merely for delay, damages shall be awarded at the rate of ten per centum per annum on the amount of the judgment.

" 2. In such cases where there exists a real controversy, the damages shall be only at the rate of six per centum per annum. In both cases the interest is to be computed as part of the damages." 1 Cranch, xviii.

The latter rule was changed in 1852, when by an amended rule, still in force, on affirmance of a judgment, interest was directed to be calculated and levied from the date of the judgment below until paid, at the same rate that similar judgments bear interest in the courts of the State where the judgment was rendered. 13 How. v.

The other rule was amended in 1871, giving ten per cent damages in addition to interest, when the writ of error appears to be sued out merely for delay. 11 Wall. x.

And both rules were extended to appeals from decrees in chancery for the payment of money in 1852. 13 How. v.

These rules may undoubtedly be regarded as prescribing the measure of damages for delay in the cases in which they apply; that is, in the case of money judgments and decrees. But whether the bond in error covered the original debt was not distinctly decided until the case of *Catlett* v. *Brodie*, 9 Wheat. 553, came before the court. In that case judgment was rendered for the plaintiff below for a large sum; but the judge who signed the citation took a bond in a small amount to respond the damages and costs. On a motion to dismiss the writ of error for insufficiency of the bond, it was contended for the plaintiff in error that the act meant only to provide for such damages and costs as the court should adjudge for the delay. But the court held that the word " damages " covered whatever losses the plaintiff might sustain by the judgment's not being satisfied and paid after the affirmance; in other words, that the bond in error had the same effect as the recognizance required by the English statutes, and was intended to secure

payment of the original judgment, as well as the damages for delay. Hence, the bond should have been taken in an amount sufficient to secure the whole debt; and it was ordered that the writ of error should be dismissed unless, within thirty days from the rising of the court, the plaintiff in error should give a bond sufficient in amount to secure the whole judgment.

In *Stafford* v. *Union Bank of Louisiana,* 16 How. 135, though no decision was made, because the case was not properly before the court, an opinion was delivered by Mr. Justice McLean, as for the court, that the same rule would apply in case of an appeal from a decree in equity for the sale and foreclosure of certain negroes who had been delivered to a receiver *pendente lite ;* and that the bond should have been to secure the whole mortgage debt. Mr. Justice Catron dissented from this view, holding that, where there was a fund in the possession of the court, no security to cover its contingent loss should be required; and that to construe the act as if this were a simple judgment at law would operate most harshly.

In accordance with the suggestion made by the court, application was made for a *mandamus* to the judge below, to compel him to cause the decree to be carried into execution notwithstanding the appeal. On a rule to show cause the judge returned the facts as above stated, and that he had no power to take further order in the case. But the court, deeming the appeal bond insufficient to operate as a *supersedeas,* granted the *mandamus.* 17 How. 275.

Subsequent decisions have undoubtedly modified the rule followed in this case, and, indeed, have overruled it, and are more in accordance with the views expressed by Mr. Justice Catron.

In *Roberts* v. *Cooper,* 19 How. 373, which was an action of ejectment for the recovery of mining lands, the plaintiff having recovered the land with only nominal damages, a writ of error was brought by the defendant, who was required to give a bond for only $1,000. The plaintiff applied to this court for an order requiring additional security, producing affidavits to show that the damages which he would sustain by the delay in working the mine, caused by the *supersedeas,* would exceed $25,000. The court refused the motion; and said that if it

were a money demand, on which a sum certain had been given by a judgment, it would have been the duty of the judge to take care that good security was given; but that in ejectment, where only nominal damages are recovered, the court cannot interfere to enlarge the security to recover damages which a plaintiff may recover in an action for mesne profits, or other losses he will sustain by being kept out of possession. The court held that the case was not provided for by any legislation of Congress, as had been done in England by the statute of 16 & 17 Car. II., c. 8.

In *Rubber Company* v. *Goodyear*, 6 Wall. 153, the subject again came before this court on a question as to the amount of security required upon appeal from a personal decree in equity, where a portion of the amount had been secured by a deposit in court. The decree was for over $300,000, and the judge following the usual practice required a bond in double the amount of the decree. The defendants, as security for the claim. had deposited in the court below government bonds to the amount of $200,000. On a motion in this court to reduce the amount of the bond, the court reduced it to $225,000. Chief Justice Chase, delivering the opinion of the court, said: " It is not required that the security shall be in any fixed proportion to the decree. What is necessary is, that it be sufficient."

From the amount involved in this case, and the eminence of the counsel engaged in it, it was no doubt carefully considered. After its determination, the court made a general rule as to the amount of indemnity required in *supersedeas* bonds, which now stands as the 29th Rule of the court. This rule declares that " such indemnity, where the judgment or decree is for the recovery of money not otherwise secured, must be for the whole amount of the judgment or decree, including 'just damages for delay' and costs and interest on the appeal; but in all suits where the property in controversy necessarily follows the event of the suit, as in real actions, replevin, and in suits on mortgages; or where the property is in the custody of the marshal, under admiralty process, as in case of capture or seizure; or where the proceeds thereof, or a bond for the value thereof, is in the custody or control of the court, indemnity in

all such cases is only required in an amount sufficient to secure the sum recovered 'for the use and detention of the property, and the costs of the suit, and ' just damages for delay,' and costs and interest on the appeal."

· Since the adoption of this rule, the matter has come up for consideration in several cases. In *French* v. *Shoemaker*, 12 Wall. 86, where the matter in controversy was the possession of a railroad, the interest of the defendant in which had been pledged as security for $5,000, and which was in the hands of a receiver, upon a decree for the complainant, and an appeal, the bond taken for a *supersedeas* was in the penalty of $500 ; and this court, after reciting the rule, held that nothing appeared to show that the bond was insufficient.

· In *Jerome* v. *McCarter*, 21 Wall. 17, an appeal was taken from a decree of over a million of dollars for the foreclosure and sale of a canal, subject to a prior lien of over a million and a half of dollars. The canal company had become bankrupt, and the assignees in bankruptcy brought the appeal. The appeal bond required of them was $10,000; and motion was made in this court to have the amount of security increased. The court after reviewing the previous cases, and adverting to the 29th Rule, refused the motion, holding that the amount of security in such a case was in the discretion of the judge who took the bond, and that this court would not interfere with that discretion, unless there had been a change of circumstances requiring additional security. The Chief Justice said : " This is a suit on a mortgage, and, therefore, under this Rule, a case in which the judge who signs the citation is called upon to determine what amount of security will be sufficient to secure the amount to be recovered for the use and detention of the property, and the costs of the suit, and just damages for the delay, and costs and interest on the appeal. All this, by the rule, is left to his discretion." It being contended that the judge had disregarded the established rule, to require security for the interest accruing pending the appeal, which in that case would amount on the debt due to the complainant and on the prior liens, to more than half a million of dollars; the court held that this is not the requirement of the rule ; that the object is to provide indemnity for the loss by the accu-

mulation of interest consequent upon the appeal, not for the payment of the interest: and that, as to this, the judge must determine. It was added, that the decree did not interfere with an action at law against the company, if it were not bankrupt, nor with proving the claim in bankruptcy, and obtaining a dividend, since it was bankrupt.

So far as the point decided in this case goes, it determines that, on an appeal from a decree for the foreclosure of a mortgage, the appeal bond is not intended as security for either the amount of the decree or the interest accruing pending the appeal, but for such damages as may arise from the delay incident to the appeal; and although it is intimated that this damage may depend upon the use and detention of the mortgaged property, yet that was not the point in judgment.

In *Ex parte French*, 100 U. S. 1 (an ejectment case), the bond being amply sufficient to cover the damages, or mesne profits, recovered in the court below, this court refused to interfere, by a *mandamus*, to compel the court below to proceed to execution. The Chief Justice said: "In this view of the case, the bonds are sufficient in amount and form. So far as the money parts of the judgment are concerned, they are far in excess in each instance of the amount recovered against the several defendants who seek the stay; and as to the damages on account of the detention of the property, we decided in *Jerome* v. *McCarter*, that the amount of the bond rested in the discretion of the judge or justice who signed the citation, or allowed the *supersedeas*, and would not be reconsidered here."

In this case the court did look to see whether the bond was sufficient to cover the mesne profits or damages recovered below; but declined to examine into its sufficiency to secure the mesne profits accruing pending the proceedings in error, leaving that to the discretion of the judge. The case decides nothing as to whether such mesne profits would be recoverable under the bond or not. By the English statute of 16 & 17 Car. II., c. 8, as we have seen, they would be so recoverable; but in *Roberts* v. *Cooper*, before cited, it was held that our statute does not provide for the case.

The last case to which we shall refer is *Supervisors* v. *Kennicott*, 103 U. S. 554. There the county whereof the plain-

tiffs in error were supervisors had given a mortgage upon its swamp lands to secure an issue of bonds by the Mount Vernon Railroad Company. This mortgage was foreclosed, and the lands were decreed to be sold to raise the amount due, which was ascertained by the decree. The county appealed, and a *supersedeas* bond of $40,000 was required to be given. The decree being affirmed by this court, a suit was brought on the appeal bond, and judgment was given against the county for the whole penalty. The judgment was brought here by writ of error, and reversed on the ground that no damages had been shown which could be recovered on the bond. The damages set up by the plaintiffs were: 1, the interest on the debt which accrued pending the appeal, which exceeded the penalty of the bond; 2, the balance of the debt which remained unsatisfied after the lands were sold, which largely exceeded the bond. We held that neither of these items could properly be assigned as damages within the meaning of the condition of the appeal bond. In that case, as was observed by the court, no claim was made for the use and detention of the lands pending the appeal, except in the way above stated. The debt was not the debt of Wayne County, and no damage could have resulted from the stay of execution except the delay in the sale, as no personal judgment could have been rendered against the county for the debt, and of course no execution could have been issued against it.

This case does not decide the precise question now before us, because there was no party before the court who was personally liable for the debt, and no claim was made for intermediate rents and profits, or for use and detention of the land.

In view of the authorities, therefore, as far as they go, if the bond in the present case is to be regarded as importing nothing more than the bond prescribed by the statute, it is clear that it did not operate as security for the original decree, nor for the interest which accrued pending the appeal, nor, by consequence, for the balance of these amounts, or either of them, after applying the proceeds of the mortgaged property. The item of $530 costs unpaid by the defendants in the original foreclosure suit come under the same head, being part of the original decree, to pay which the lands were ordered to be

sold.    The only ground of recovery upon the bond could be : 1, the depreciation of the property in market value pending the appeal ; or, 2, its deterioration by waste, or want of repair, or the accumulation of taxes or other burdens ; or, 3, the use and detention of the property pending the appeal, that is, the rents and profits; or, 4, the non-payment of the costs of the appeal, which accrued in this court; but the special verdict does not find that these costs were unpaid.

If depreciation in market value can ever be laid as cause of legal damages on a bond in error (which we greatly doubt), it cannot be done in this case, because it is found by the special verdict that the property considerably increased in value pending the appeal.    Deterioration by waste, &c., is a very different matter; but that is equally out of the question in this case, as no deterioration is shown.    The defendants paid the taxes and insurance, and kept the property in repair.    The principal question for consideration, therefore, is, whether the plaintiffs were entitled to recover the rents and profits, or damages for the use and detention, as it is otherwise called.

We have seen that even in ejectment it has at least been questioned by this court whether the bond in error covers rents and profits accruing pending the writ.    And yet there is a material difference between the case of ejectment and a suit for the foreclosure of a mortgage.

The difference is this : in ejectment the property of the land is in question, and if the plaintiff has the right, he is entitled to immediate possession and to the perception of the rents and profits, which belong to him, and for which the defendant in possession is accountable to him.    Every dollar, or dollar's worth, is so much of the plaintiff's property of which he is deprived.    And the same is true in dower.    But in the case of a mortgage, the land is in the nature of a pledge; and it is only the land itself — the specific thing — which is pledged.    The rents and profits are not pledged : they belong to the tenant in possession, whether the mortgagor or a third person claiming under him.    This is not only the common law, but it is the express statute law of Nebraska, which declares that, " in the absence of stipulations to the contrary, the mortgagor retains the legal title and right of possession."    The plaintiff, in this

case, was not entitled to possession, nor to the rents and profits. His foreclosure suit did not seek possession, but sought a sale of the specific thing, — the land. In such a case, until the litigation is ended, it doth not appear that there must be a sale, or even that the plaintiff is entitled to a sale. The defendant in possession is entitled to redeem the land until a sale is made, and until then he is entitled to the rents and profits, which belong to him as of right. The taking of the rents and profits prior to the sale does not injure the mortgagee, for the simple reason that they do not belong to him. Waste, that is, destruction or injury to the land itself, as before stated, is an injury to the mortgagee. It diminishes the value of the pledge; and for such injury no doubt he might recover on the appeal bond. Other deteriorations, such as occur by want of repairs, accumulation of taxes, fires not covered by reasonable insurance, and the like, probably might also be fairly covered by the bond. But perception of rents and profits is the mortgagor's right until a final determination of the right to sell, and a sale made accordingly.

The mere delay of the sale for the purposes of an appeal does not operate to the legal injury of the mortgagee. It does not suspend execution for the debt; he has no right to such an execution by the decree of foreclosure and sale. It is not a decree against the person, and cannot be enforced by an execution against goods and lands generally. It is simply a decree for the sale of the land mortgaged, in order that the proceeds may be applied to the debt. The amount due is ascertained by the decree, it is true, but only for the purpose of determining the amount of charge on the land. The debt may be prosecuted by a personal action against the debtor, and this may be the defendants in the suit, or some other person. The rule of court by which a personal decree may, in some cases, be entered up against the mortgagor for the residue of the debt, after the proceeds arising from the sale of the land have been applied, is a recent rule intended to obviate the necessity of a separate action. It has not changed the essential nature of the decree for foreclosure and sale.

It often happens that the debt is not fully ascertained when a decree for sale and foreclosure is made; as where there are

many outstanding bonds which have to be called in and veri-
fied. The sale in such cases is frequently made in advance,
and the proceeds brought into court for distribution amongst
those who may appear to be entitled thereto ; all which shows
that a decree of foreclosure is a very different thing from a per-
sonal decree or judgment for the debt.

As it is the specific thing, the land itself, and not the rents
and profits, that constitutes the pledge, the delay of sale caused
by the appeal, as before said, deprives the mortgagee of no
legal right. It may be an incidental disadvantage or incon-
venience, but in our judgment it is not a legal damage contem-
plated by the appeal bond. We are aware that a contrary
view has sometimes been taken at the circuit ; but upon a
full consideration of the subject, we have come to the conclu-
sion now expressed. The chances of actual deterioration and
waste in certain classes of property are so great, that a bond in
considerable amount may well be required, and if actual dete-
rioration and waste supervenes, the amount may properly be
recovered.

In addition to these general considerations, a careful exami-
nation of the 29th Rule will show that in cases like the present
it does not, in terms at least, contemplate security for the use
and detention of the property pending the appeal. The words
are, " indemnity in all such cases [where the property in con-
troversy necessarily follows the event of the suit] is only re-
quired in an amount sufficient to secure the sum *recovered* for
the use and detention of the property, and the costs of the suit,
and just damages for delay," &c. " The sum recovered for use
and detention," here referred to, means the sum recovered in
the original judgment or decree, such as damages and mesne
profits in ejectment, damages in dower, and replevin, &c., and
the phrase " just damages for delay " refers to those dam-
ages arising from the delay occasioned by the proceedings in
error or appeal, which are properly a legal damage to the party
delayed. We are thrown back, therefore, to a consideration of
the nature of the particular case, to ascertain what those legal
damages properly are. The words " use and detention " do
not assist us, as they relate to a cause of recovery in the orig-
inal judgment.

There is another consideration which relieves the conclusion which we have reached from any supposed hardship or injustice to mortgagees.  Courts of equity always have the power, where the debtor is insolvent, and the mortgaged property is an insufficient security for the debt, and there is good cause to believe that it will be wasted or deteriorated in the hands of the mortgagor, as by cutting of timber, suffering dilapidation, &c., to take charge of the property by means of a receiver, and preserve not only the *corpus*, but the rents and profits for the satisfaction of the debt.  When justice requires this course to be pursued, and it is resorted to by the mortgagee, it will give him ample protection.  There is no necessity, therefore, in order to protect him from injury, that a party, in order to have the benefit of an appeal, should be obliged to give security to account for the intermediate rents and profits of his own property.

We have devoted so much space to a consideration of the principal question, that we must dismiss the other point in a few words.  The plaintiffs contend that the bond in terms requires the defendant to respond for the " use and detention ". of the property covered by the mortgage during the pendency of the appeal.  As the judge had no authority to require such a condition to be inserted in the bonds, and probably was not aware of its insertion in this case, and as a party ought not to be deprived of his right of appeal upon the terms which the law prescribes, we should be very reluctant to hold that this was a voluntary bond, knowingly entered into beyond the requirements of the statute.  We should rather hold that it was drawn by attempting to copy the words of the 29th Rule, instead of following the statute, and inadvertently omitting the connecting words.  As an appeal bond, or bond in error, is a formal instrument required by the law, and governed by the law, and has, by nearly a century's use, become a formula in legal proceedings, with a fixed and definite meaning, and as the important right of appeal is greatly affected by it, we think that it is not allowable, in practice, by a change in its phraseology, to give to it an effect contrary to what the statute intended.  It would be against the policy of the law to allow such deviations and irregularities to creep in.  We think the

rule followed in some of the States is a sound one, that if the condition of an appeal bond, or bond in error, substantially conforms to the requisitions of the statute, it is sufficient to sustain it, though it contain variations of language; and that if further conditions be superadded, the bond is not therefore invalid, so far as it is supported by the statute, but only as to the superadded conditions. See *Sanders* v. *Rives*, 3 Stew. (Ala.) 109; *Gardener* v. *Woodyear*, 1 Ohio, 170.

We are aware, as shown by the citations on the plaintiffs' brief, that official bonds, and bonds given to the government for the purpose of enjoying certain offices or privileges, and perhaps some others subject to like reason, have often been sustained as contracts at common law, voluntarily entered into, where they have not conformed to the statutory requirements, and would have been insufficient and ineffectual for the purposes of a recovery, if those requirements had been applied to them. We do not think that this case fairly belongs to that class of cases. Had the bond now under consideration so entirely departed and varied from the statute that it could not have been sustained with the effect of an ordinary appeal bond, the question would then more properly have arisen, whether, on the one hand, it might not be sustained as a bond at common law, or, on the other, declared utterly void.

Our conclusion is, that no damage or cause of action appeared by the verdict of the jury which could authorize a judgment for the plaintiffs.

> *Judgment reversed, and cause remanded with instructions to render judgment for the defendants below.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD, dissenting.

The decision of the court, with the grounds on which it is based in this case, is so wide a departure from the former practice in similar cases, and is likely to work so much injustice in future, that I feel it to be my duty to dissent, and to give the reasons for it.

I am at a loss to see the value of the learned search into the practice and precedents of the English law in writs of error and appeals, and deem it only necessary to say that in our

system the right to a writ of error or to an appeal depends wholly upon statutes granting that right, and not upon any principle of the common law, or upon any power in any court to review the decisions of any other court which is not also the creation of positive statute, and which in the courts of the United States must necessarily depend upon an act of Congress. So, also, the mode of exercising this right, the conditions on which the writ or the appeal may be had, and its effect on the progress of the case, are all prescribed by statute.

A striking illustration of this is in the fact that in the English courts a writ of error sued out or an appeal once allowed, transferred the case itself, its record, and all proceedings under it, into the reviewing tribunal, and left nothing in the inferior court on which it could act. The acts of Congress proceed upon a wholly different principle. They allow a party to take an appeal or bring a writ of error, but neither proceeding removes the record into the appellate court, as the case may be heard there upon the *transcript* of the record, the original remaining in the inferior court.

Unless the plaintiff in error or the appellant takes the other step which the law prescribes, the court which rendered the judgment complained of can proceed to execute its judgment or its decree, though the case be pending in the appellate court. In fact, unless the other step mentioned be taken, a valid sale of his property may be made at the very moment when the appellate court is deciding to reverse the judgment or the decree on which it is sold.

This other step, then, which the party appealing may take, and thereby totally suspend the power of the inferior court to proceed, is wholly and absolutely statutory. It is here for consideration in this case, and should be decided alone on the language and meaning of the statute.

This step is the giving of a bond which, because it has the effect of suspending the action of the inferior court, is called a *supersedeas* bond, in analogy to the effect of a writ of *supersedeas* in the English law from the superior to the inferior court.

The law of this subject is found in sect. 1000 of the Revised Statutes: " Every justice or judge signing a citation or any

writ of error, shall, except in cases brought up by the United States, or by direction of any Department of the Government, take good and sufficient security that the plaintiff in error, or the appellant, shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, shall answer all damages and costs, where the writ is a *supersedeas* and stays execution, or all costs only where it is not a *supersedeas* as aforesaid." As thus stated in the Revision, the law is the result of sect. 22 of the act of Sept. 24, 1789, c. 20, as amended by the act of Dec. 12, 1794, c. 3.

It has never been doubted that under these acts the appealing party could have his election to make his writ of error operate as a *supersedeas* or not, and that the amount of security to be given would depend very much on this choice. If he did not wish to stay execution, he was only required to secure payment of the costs of the appeal. If he did wish to stay execution, he must give bond to answer *all* damages as well as costs, so that both the condition of the bond to be given and the amount of it must depend on the effect it had on further proceedings in the inferior court.

The decisions of this court, and the practice of the judges under it, are given with reasonable accuracy in the opinion of the majority, from the date of the last of these acts until the adoption of Rule 29 of this court in 1867. *Rubber Company* v. *Goodyear,* decided in that year, 6 Wall. 153, and some previous cases, had shown great oppression in exacting security in an excessive amount to stay execution in cases where but little damage could accrue to the appellee, because, as in case of proceedings *in rem,* where there was no personal liability, and there could be no loss except from the delay, and in cases of mortgage foreclosures, where there could be no other decree but for a sale of the property. The result was the adoption of that rule, in which the court undertook to define what damages were allowable in the various classes of cases where the plaintiff in error or the appellant obtained a stay of execution or *supersedeas* pending the appeal. This rule was intended for the guidance of the judges whose duty it was to approve bonds in appeals or writs of error. It was the construction of the members of the court of that day as to the damages which, in the

various kinds of cases mentioned in it, the party who had obtained a *supersedeas*, and had failed in his appeal, was liable under the act of Congress to pay for his false clamor to the party whom he had unjustly delayed after final judgment against him, for only final judgments can be reviewed in this court.

Of the justices who participated in framing that rule, in which all acquiesced, but two remain, and neither of them concurs in the construction now given to it by the majority of the court, nor in the construction of the statute under which it was framed.

In the case before us the bond sued on was given to suspend an order of sale in a suit to foreclose a mortgage, and the question is, whether the bond, which is substantially conformable to the rule of the court, covers the rental value of the mortgaged property during the three years of delay while the case was pending in this court. The property was sold for a sum much below the amount of the debt, for the payment of which it was decreed to be sold. During all that time the mortgagor was in possession. The property was a public hotel, and the jury find the rent was worth $38,241.75.

The opinion of the court is based upon two propositions: 1. That the mortgagor had a right to the use and occupation, even after condition broken, until judicial sale, and was not bound to the mortgagee for their value. 2. That the rule does not make any provision for rent pending the appeal.

I do not agree to either proposition. The mortgagor, after condition broken, has no right in law or equity to the possession of the mortgaged property, unless it be so expressed in the mortgage. If it be personal property, it is every-day practice for the mortgagee, after condition broken, to seize the goods and chattels and hold them until the debt be paid, or to sell them in satisfaction of the debt. If the mortgagor refuse to deliver possession on demand, the mortgagee can recover it by replevin; and this is often done. How could this be so if the mortgagor's right to possession remained after condition broken?

If the mortgaged property be real estate, the common law allowed the mortgagee an action of ejectment after condition broken. This was formerly the usual mode of foreclosure, and

is retained in many States to this day. How can there be any right in the mortgagor to possession when this right to recover by an action of ejectment belongs to the mortgagee? The two rights are inconsistent and cannot coexist. It is conceded that in such a case as the present one, where the mortgaged property is insufficient to pay the debt, the mortgagee has the additional equitable right to have a receiver appointed to take possession, and in the end, if necessary, the rents and profits will be appropriated to pay the deficiency. How can all this be done if the mortgagor has the right to continue in possession after he has broken the condition of his mortgage?

The truth is, the idea has obtained footing in practice because it is easier to get a decree and sell the property than to dispossess the mortgagor, and hence attempts to do so are rare. But when the mortgagee has pursued the former course and obtained his order of sale, — a decree which is final, for no other decree can be appealed from, — this right of the defaulting mortgagor to further possession of the property, while he transfers the litigation to another court and protracts it for three years, is an inequitable abstraction, founded neither in the common-law rights of the parties nor in any principle of equitable jurisprudence. The whole error is founded on the idea that so long as the mortgagor is *permitted* to retain possession he is not accountable for rent, and not upon the existence of any *right* to retain possession.

And so the act of Congress says, If you wish to appeal this case to another court and go through another trial, instead of appointing a receiver to take possession, we will require of you a bond to secure all damages suffered by the appellee by reason of the delay; and as he is entitled to have the land sold at once for his debt, or to have possession delivered so that rents and profits may be appropriated where they ought to go, you can only suspend the operation of the decree by giving such a bond.

If this be not so, the grossest injustice must result in many cases. In all cases of insolvent mortgagors the rule, as construed by the court, offers a strong inducement to keep the mortgagee out of his money as long as possible, without interest, or any other compensation for the delay. An insolvent

corporation—a railroad company, for instance,—makes default in its mortgage bonds, which amount to twice the value of the property mortgaged. A decree is obtained for its sale, and before a receiver can be appointed the directors take an appeal, give a small bond, little more than the probable costs, and then use the road for three years, making millions of dollars out of it with which to pay debts subsequent to the mortgage, or distribute among interested parties. No more striking instance of its injustice is needed than the case before us. A decree for money largely in excess of the value of the hotel mortgage is stayed by a bond for $50,000, under which the defendant, an utterly insolvent corporation, receives rent, or uses the property to the value of $38,000, while it litigates, without a shadow of right, in this court for three years, and appropriates this $38,000 to its own use, and is not held responsible for this, though the bond expressly mentions "*the use and detention*" of the property as one of the liabilities incurred, if the corporation fails to make good its plea.

But, it is said, the rule only provides for the use and detention of the property, before the decree, which is appealed from. The language of the rule is, that in such cases, mentioning mortgage foreclosure suits specifically, "indemnity in all such cases is only required in an amount sufficient to secure the sum recovered for the use and occupation of the property, and the costs of the suit and 'just damages for delay,' and costs and interest on the appeal." That the use and detention here spoken of, like all the other classes of damages there mentioned, are such as may thereafter be recovered, is as plain as that the delay and the costs and interest are such as follow, and not such as precede, the decree. It is senseless, without it meant this, and such has been the practical construction since its adoption.

Not only is this true in practice, but in the leading case, construing this rule for the first time, of *Jerome* v. *McCarter*, 21 Wall. 17, the Chief Justice expressly held that the rent mentioned in the rule is that accruing after the appeal.

That was an appeal from a foreclosure decree and a motion for additional security in this court. Mr. Phillips, for appellant, in support of the sufficiency of the bond, cited *Roberts* v. *Cooper* to show that nothing could be recovered for

the use and detention of the property. But the Chief Justice, after citing the rule verbatim, said: "This is a suit on a mortgage, and therefore, under this rule, a case in which the judge who signs the citation is called upon to determine what amount of security will be sufficient to secure the amount to be recovered for the use and detention of the property, and the costs of the suit, and just damages for the delay, and costs and interest on the appeal."

Here is a construction of the rule by a unanimous court in a case where the precise question was presented.

The decision of the court in this case overrules it, and establishes in its place a rule which, in many cases, must work injustice, and in no case is equitable; for, in the language of that rule, leaving out the words "use and detention," this is a necessary part of the other words, "just damages for the delay."