MIDCOAST INVESTMENT COMPANY v. S. V. SMITH, CHARLES
A. WILLIAMS and LOOMIS WILLIAMS.

194 So. 222
Division A
Opinion Filed February 20, 1940

*B. M. Skelton* and *Charles J. Schuh,* for Plaintiff in Error;

*Bradley & Wehl,* for Defendants in Error.

THOMAS, J.—S. V. Smith appealed from a final decree of foreclosure entered against him and in favor of Midcoast Investment Company with the result that an affirmance was ordered by this Court. Smith v. Midcoast Investment Company, 127 Fla. 455, 173 South. Rep. 348.

The appellant and his sureties, who are defendants in error in the instant appeal, executed a supersedeas bond in the sum of fifteen hundred dollars binding themselves to pay the appellee, plaintiff in error here, all costs and damages incurred by reason of the appeal should the decree be affirmed.

Action was instituted on the bond culminating in a verdict and judgment for the defendants.

Before entering into a discussion of the merits of the appeal we will dispose of a matter of procedure which was first called to our attention by motion to strike the bill of exceptions and delayed until final argument.

The case was tried January 4, 1939, during the December term (1938) and on February 7, following, motion for new trial was denied with allowance of 60 days to present the

bill of exceptions. The record is silent as to the adjournment sine die of the term and we are ignorant, therefore, about the date it ended except that by law the next term commenced on the first Monday in May (Sec. 4814, C. G. L.), hence, in the absence of contrary information in the record, we will assume that the December term ended simultaneously with the opening of the one in May.

The day the prior term was concluded is not of much importance now because Rule 88, which has superseded original Rule 97, provides a definite period of filing bills of exceptions irrespective of the terms.

We have examined three cases decided by this Court interpreting Rule 97: Rehfield v. Moore, 76 Fla. 378, 80 South. Rep. 52; Lewis v. Meginniss, 25 Fla. 589, 6 South. Rep. 169; and Worrell v. Ford, 90 Fla. 571, 107 South. Rep. 183. Substance of the holdings is that under a provision that bills of exceptions should be signed during the term at which the verdict was rendered "unless * * * further time is allowed" an order permitting a definite time for the purpose without further restriction would be construed as an extension beyond the end of the term.

The new rule, 88, is the same as the old one except that bills of exceptions may be "made up and signed or lodged in the office of the clerk within 90 days after verdict or order on motion for new trial, unless by special order entered within such time (whether the term shall have expired or not) further time be allowed."

In the pending controversy the judge allowed sixty days to file the bill of exceptions. He was not empowered to shorten the period for compiling and filing this record as the plaintiff in error was given ninety days and the court could only enlarge the time. Though the order did not indicate an intention on the part of the court to extend the

period an additional sixty days, we will so construe it because the principle involved is the same as in the cases cited even if the rules are not identical. Another consideration which influences us in reaching this conclusion is that this is the construction placed upon the order by the judge who rendered it when he overruled objections to the bill of exceptions on the ground that it was filed too late and in addition a contrary ruling would render that part of the order relating to the sixty-day period meaningless. Concluding thus, we proceed to a determination of the case on its merits.

Epitomized, the declaration on the bond set out that the order for supersedeas besides fixing the conditions of the bond provided that upon its approval the property involved in the suit should revert to the possession of the principal (S. V. Smith); that it was consequently surrendered to him by the receiver theretofore appointed; that the principal collected the rents, allowed the premises to deteriorate to the amount of $500.00 and failed to pay the taxes thereon in the sum of $350.00; that "there was lost to the Receiver of said premises the value of the use thereof, by reason whereof the plaintiff lost the value of the use" thereof; that at the end of the foreclosure there was a deficiency of more than two thousand dollars.

Ten pleas were filed on behalf of the defendants but we will refrain from analyzing them because to do so might obscure the real question at issue, namely, what costs and damages were suffered by the appellee in the foreclosure by reason of the appeal in which this court affirmed the final decree. The theory of the plaintiff in error as to the damages he had shown by the testimony is indicated by the statement of its counsel made to the court at the conclusion of the introduction of plaintiff's testimony. He was asked by the trial judge: "The only question is the ques-

tion of damages. What damages have you proven * * *?" The reply: "The use value of this property; $100.00 a month for 20 months, $2,000."

A feature of the controversy which engages our interest is the account given by the president of plaintiff in error of the handling of the property after sale by the master to plaintiff in error. He recounted that a lease was given by the plaintiff in error to the defendant in error, S. V. Smith, a few days after confirmation of the master's sale. The rental was one hundred dollars monthly for the term of the lease and thereafter until thirteen months had elapsed. Meanwhile on January first, 1938, the president had procured title to the property and on June eighth, following, entered an agreement with Smith, who was the appellant in the foreclosure suit, principal on the supersedeas bond and who is one of the defendants in error here, to sell him the identical property for $7,500.00 with six per cent interest on deferred payment of $100.00 each. The buyer undertook to pay all taxes and ·insurance premiums. In the contract it was recited that there was a possibility that the United States Government might "sponsor some use of said property * * * and that the U. S. Government or the City of St. Petersburg or other authority may wish to acquire said property by condemnation or otherwise * * *." In such event the seller was to receive the amount paid above the purchase price and taxes discharged,. eliminating any profit to Smith from that source, and if the price was less than $7,500.00 Smith was to be credited with the difference between that amount and the sum he had undertaken to pay thus relieving him of any loss by reason of the acquisition by a government agency.

At the master's sale the property fetched $6,000.00 and a deficiency was entered for about $2,500.00. We have drawn attention to the subsequent lease and contract for

the reason that the amount of damages claimed for loss of use of the property was computed at $100.00 monthly, the amount received under the lease, and the president of the corporation sold for $1,500.00 more than the bid at the master's sale. The property having remained in the possession of Smith after the sale for more than a year and having been then bought by him for $1,500.00 in excess of the amount received by the master does not indicate any loss by deterioration.

The mortgage which was originally foreclosed does not appear in this record, consequently, we are not able to determine its provisions with reference to any lien on the income or any agreement between the mortgagor and mortgagee for the appointment of a receiver. Presumably, the order of the chancellor, which does not recite any findings of fact, was entered for the purpose of preserving the status of the encumbered property by preventing waste or deterioration. Apalachicola Northern R. Co. v. Sommers, 79 Fla. 816, 85 South. Rep. 361.

Just why damage chargeable under the bond should be the loss of rental at $100.00 each month during the delay caused by the appeal is not clear to us. Disregarding the total failure to show the cost of receivership, which would have necessarily diminished the amount claimed of $100.00 monthly for twenty months, the debt, in the interim, was drawing interest which was doubtless reflected in the amount eventually computed when the deficiency was entered. The property was that of the defendant until he was divested of his title by delivery of the master's deed and there was no presumption that when sold the purchaser would be the plaintiff in the foreclosure suit.

It is true that had the receiver remained in control he would have received rents which would have been applied to the debt after the costs had been deducted and that

the deficiency would have been reduced but a judgment on the bond for the loss of this income would not be justified with the deficiency unsatisfied and, so far as we know, recoverable. See Omaha Hotel Co. v. Kountze, 107 U. S. 378, 27 L. Ed. 609, text 615, 2 Sup. Ct. Rep. 911.

Summarizing, we hold that proof of rental value of mortgaged property would not alone, support judgment on a supersedeas bond for damages occasioned by an appeal from a final decree of foreclosure.

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J., concurs in opinion and judgment.

Justices WHITFIELD and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.