## No. 2383.

### JOHN IRELAND, GOVERNOR, v. MOSES TAYLOR ET AL.

1. BOND—RAILWAY.—Neither under the act of August 15, 1870, nor under the joint resolution of May 18, 1871, could the Governor of Texas, after a sale had been made to the State of the Houston Tap & Brazoria Railroad, exact from a subsequent purchaser a bond conditioned that the purchaser would keep said railroad in running order, and that he would not remove or cause to be removed any of the iron from the track of said railroad or any of the rolling stock therefrom.

2. SAME.—Since the Governor was neither authorized by the Legislature to require such a bond, nor to annex such conditions to the sale of the road, such a bond was without lawful consideration to support it, and therefore invalid.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

*W. C. Oliver,* for appellant.

*Baker, Botts & Baker,* for appellees.

GAINES, ASSOCIATE JUSTICE.    This suit was brought by appellant as Governor of the State of Texas to recover the sum of fifty thousand dollars, the penalty of a bond executed by Moses Taylor as principal and B. A. Shepherd and William M. Rice as sureties.

Plaintiff also sought to recover the title and possession of the Houston Tap & Brazoria Railroad, which was alleged to be in possession and under the control of the International & Great Northern Railroad Company and the Missouri Pacific Railway Company—both of which were made parties defendant. Demurrers to the petition were sustained in the court below and plaintiff declined to amend. The suit was accordingly dismissed and plaintiff now appeals.

In the petition and supplemental petition (called a replication) the following facts appear:    The Houston Tap & Brazoria Railroad Company being indebted to the State, the Legislature, on the fifteenth of August, 1870, passed an act directing a sale of the railway of the company, which contained the following provision:

"Said sale shall be made at the front door of the capitol, in the city of Austin, and shall be conducted by the Governor or by some one appointed by him for that purpose. It shall be to the highest and best bidder for cash, and the Governor is authorized and required to execute and deliver to such purchaser a deed of conveyance to the property so sold, whenever such purchaser shall have entered into good and sufficient bond, payable to the Governor of the State, in the sum of ($50,000) fifty thousand dollars, conditioned that such purchaser will keep said railway in running order, and will not remove or cause to be removed any of the iron from the track of said railway, or any of the

rolling stock therefrom." (General Laws Twelfth Legislature, p. 233.)

The Governor accordingly sold the road, and the State became the purchaser. Thereafter on the eighteenth of May, 1871, the Legislature passed a joint resolution authorizing a sale of the railroad. This resolution is referred to in the petition, and though not copied therein, for the sake of convenience we here set it out:

"Be it resolved by the Legislature of the State of Texas, That His Excellency the Governor of the State be and he is hereby authorized to dispose of the Houston Tap & Brazoria Railroad, now in possession of the State. The disposition of said railroad to be by public or private sale, upon such terms and to such parties as he may deem best for the security of the school fund of of the State; provided, that no sale or transfer shall be made to any parties until thirty days from the passage of this joint resolution, and not for less than the actual value of the iron on the the track; and provided further, that the Governor may give the citizens residing on said road, or tributary to it, the preference of buying said road, so that the rails of said road may not be removed from the track of said road as at present located."

On the twenty-first of July, 1871, the Governor sold the property to Masterson and Wagley, but before the transaction was consummated, by agreement of the parties Moses Taylor was substituted to the rights of the purchasers. He accordingly made the bond sued upon and paid the purchase money, amounting to one hundred and thirty thousand dollars, and a conveyance was thereupon made to him. This provided that it was subject to the conditions stated in the bond, which is mentioned above.

Was the Governor authorized, either by the act of August 15, 1870, or the joint resolution of May 18, 1871, to require this bond of the purchasers of the railroad? We are of opinion that he was not. In the first place, the act of 1870 applied only to the first sale. After the State became the purchaser, the act had performed its functions, and the authority conferred by it upon the Governor had wholly ceased. But, if it could be said that the joint resolution revived his power to require a bond, as given by the previous act, it is sufficient to say that the conditions of the bond required, and that actually given are substantially different, and, for that reason alone, the authority of the act can not be invoked to support the validity of the instrument in ques-

---

---

tion.   But it is also claimed that so much of the joint resolution
as provides that "the disposition of said road to be by public or
private sale, upon such terms and to such parties as he" [mean-
ing the Governor] "may deem best for the security of the school
fund of the State;" empowered him to annex such conditions to
the conveyance as he saw fit, and that therefore he was author-
ized to require the bond.   But we do not so construe the resolu-
tion.   The word "terms" was evidently intended to apply to the
amount of the price, and the time of payment, and the clause
was doubtless inserted to enable him to obtain a better price by
selling upon credit, provided he could so sell to such parties as
could make the payments secure.   The object of the provision
was to protect the interest of the school fund.   It was not to
invest the Governor with power to annex conditions to the con-
tract which were calculated to reduce the price rather than en-
hance it.   Instead of making a provision for keeping up the
road, the Legislature seemed to contemplate that in the event
"the citizens residing on the road or tributary to it" did not buy,
that the purchaser should have the right to remove the rails.

The authority to require railroad companies to keep their
roads in operation and repair, is a function which properly be-
longs to the legislature; and we do not think that body intended
to leave this matter to the discretion of the governor in the par-
ticular instance under consideration.

It follows from what we have said that in our opinion the
governor was not authorized to require this bond of the pur-
chaser of the road; and since the Legislature did not invest him
with power to annex any such conditions to the sale of the
property, it must be held that the instrument was without a
awful consideration to support it, and is, therefore, invalid.
This principle is substantially held by this court in the case of
the Leona I. M. & C. Co. v. The Governor, in 62 Texas, 615.

The petition also prays for a recovery of the title and posses-
sion of the road—we presume upon the ground that the deed
makes a compliance with the stipulations of the bond a con-
dition of the conveyance.   But, if such stipulations could have
been lawfully embraced in the contract, and if the Governor
had the right to bring a suit in behalf of the State, in his own
name to enforce the forfeiture, we do not think the property
could be recovered without an offer to pay back the purchase
money.   But this is not insisted upon in the brief, and we need
not discuss the question.

The court did not err in sustaining the general demurrer to plaintiff's petition, and this necessarily disposes of the other errors assigned.

The judgment is, therefore, affirmed.

*Affirmed.*