CLAY et al. v. RICHARDSON.   (No. 11999.)

Court of Civil Appeals of Texas.   Fort Worth.
July 14, 1928.

On Motion for Rehearing Sept. 29, 1928.

Bonner, Bonner & Fryer, of Wichita Falls, and W. L. Scott, of Olney, for appellants.

DUNKLIN, J.   As shown by opinion reported in 290 S. W. 235, this court affirmed a judgment of the trial court, awarding to John Richardson a permanent injunction restraining W. T. Clay and L. K. Bray from further conducting a picture show in the town of Olney, known as the Palace Theater, in competition with another picture show operated by plaintiff, Richardson, in the same town and known as the Princess Theater.   That judgment by this court became final, a writ or error therefrom having been dismissed by our Supreme Court.   The judgment of the trial court in that case, after awarding the decree for perpetual injunction, contained the following:

"It is further ordered, adjudged, and decreed by the court that the defendants shall have the statutory time in which to prepare and perfect their appeal in this said cause, and the defendants' attorneys, upon the announcement by the court of his judgment in this said cause, then

and there in open court duly and legally excepted to the court's action and then and there gave notice of appeal to the Court of Civil Appeals in and for the Second Supreme Judicial District sitting at Fort Worth, Tex., and the defendants' attorneys then and there in open court stated that he desired to supersede said judgment, and the court then and there fixed the supersedeas bond at $2,000.

"And it is further ordered and directed by the court that upon a supersedeas bond being filed in this said cause, as required by law and in the time required by law, in said sum, shall be duly approved by the clerk of the district court of Wichita county, Tex., that the action under this said judgment shall be, and the same is here and now, in all things suspended pending the hearing of this said cause in the appellate court."

Thereafter the defendants W. T. Clay and L. K. Bray filed with the clerk of the court a bond reciting the rendition of the judgment against them, their exceptions thereto, and notice of appeal to the Court of Civil Appeals, after which recitals the bond continues as follows:

"And the court having by an order made in said judgment suspended the enforcement of said injunction pending the appeal of this case, upon the filing by the defendants W. T. Clay and L. K. Bray, of a supersedeas bond for $2,000, payable to said plaintiff as required by law:

"Now, therefore, we, W. T. Clay and L. K. Bray, as principals, and the other subscribers hereto, as sureties, acknowledge ourselves bound to pay said John Richardson the sum of $2,000, conditioned that the said defendants W. T. Clay and L. K. Bray shall prosecute their appeal with effect, and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against them, they shall perform its judgment, sentence, or decree and pay all sums of money and costs which may be adjudged against them, and all such damages which said John Richardson, plaintiff, may suffer."

The bond was executed by Clay and Bray as principals and by Sam Bird, J. L. James, J. C. Webb, and L. P. Seattler as sureties. The bond was duly approved by the clerk of the trial court. Attached to the certificate of approval is the certificate of the clerk to the effect that he had fixed the probable amount of the costs of the suit in the Court of Civil Appeals and the Supreme Court at $80. Thereafter the appeal was prosecuted under and by virtue of said bond, and no action was taken to enforce the decree pending the appeal, and the judgment of this court noted above was rendered upon that appeal. After the bond was filed the defendants Clay and Bray continued to operate the picture show in controversy, known as the Palace Theater.

On February 19, 1927, John Richardson instituted this suit against Clay and Bray as principals and the sureties mentioned above, alleging that, at the time the judgment of the trial court was entered, he owned and operated another theater, known as the Princess Theater, in the town of Olney, which he had theretofore purchased from defendant Clay and another person, out of which purchase he was realizing a profit of $500 a week before defendants Clay and Bray began the operation of the Palace Theater, and that, by reason of the competition resulting from the operation of the Palace Theater by the defendants Clay and Bray, plaintiff's profits from his theater were diminished to $200 a week. It was further alleged that such loss of profits continued during the pendency of the appeal of the former suit, and that the defendants became liable to him for such loss of profits under and by virtue of the terms of the appeal bond recited above.

Upon a trial of the case before a jury, judgment was rendered in favor of the plaintiff against the defendants Clay and Bray for the sum of $3,150 and against the sureties on the appeal bond for the sum of $1,880 of said amount; the sureties being given a credit on the $2,000 fixed by the bond of $120 paid by them as costs in the former suit. From that judgment, all of the defendants have prosecuted this appeal.

The defendants Clay and Bray as a special defense, pleaded an alleged agreement on the part of plaintiff, Richardson, supported by valuable consideration passing to him, to release the said defendants from any claim for damages resulting from the operation of the theater in controversy pending the appeal; it being alleged that said compromise agreement was made by Charles Richardson, brother of plaintiff, and that he was the duly authorized agent of plaintiff to make such settlement. There was a further special plea to the effect that the theater which was owned and operated in the plaintiff's name was in fact an undertaking in which plaintiff's father, J. T. Richardson, and his brother, Charles Richardson, and plaintiff were all jointly interested and by virtue of which joint undertaking Charles Richardson was authorized to make such compromise agreement in behalf of all, including the plaintiff.

In answer to special issues, the jury returned findings adverse to the special defenses last noted. Special issue No. 3, with the jury's finding thereon, was as follows:

"What amount of money, if any, did the plaintiff, John Richardson, lose by reason of the operations of the Palace Theater in Olney, Tex., from December 23, 1925, to May 29, 1926? Answer: $3,150."

December 23, 1925, was the date the appeal bond was filed and May 29, 1926, was the date of the final judgment of this court on the appeal, the period of time between those two dates being the period of time which the theater was operated by the defendants pending the appeal.

The right of appeal from all final judgments, such as the one involved on the former appeal of the case, is expressly given by

article 2249, Rev. Statutes of 1925. Article 2265 provides for the execution of an appeal bond in double the probable amount of the cost of the court below and of the Court of Civil Appeals and of the Supreme Court, to be fixed by the clerk; and article 2266 provides for the giving of an affidavit in lieu of the cost bond when the party appealing is too poor to pay the costs or give security therefor. Article 2267 provides that the filing of a bond or affidavit in lieu thereof, as provided for in the two preceding articles, shall perfect the appeal; but article 2268 provides that such bond or affidavit shall not have the effect to suspend the judgment pending the appeal, and that execution may issue on the judgment as if no appeal or writ of error had been taken.

Article 2270 reads as follows:

"An appellant or plaintiff in error, desiring to suspend the execution of the judgment may do so by giving a good and sufficient bond to be approved by the clerk, payable to appellee or defendant in error, in a sum at least double the amount of the judgment, interest and costs, conditioned that such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect; and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against him, he shall perform its judgment, sentence or decree, and pay all such damages as said court may award against him."

The bond mentioned in article 2270 is usually designated as a supersedeas bond. There is no statute which in specific terms provides for a supersedeas bond to suspend the enforcement of a permanent injunction pending an appeal from a final decree awarding that relief. Waters-Pierce Oil Co. v. State, 107 Tex. 1, 106 S. W. 329, 330, was an appeal from an order appointing a receiver after a judgment had been rendered therein in favor of the state for the sum of $1,623,-000. Two appeals were prosecuted, one in the main case under a supersedeas bond in double the amount of the judgment. The appeal from the order appointing the receiver was upon a bond in a sum fixed by the judge of the trial court conditioned as prescribed by a statute for a supersedeas bond. In the opinion the following was said by our Supreme Court:

"Upon the motion of the Attorney General, requesting this court to appoint a receiver in this case, it is insisted by counsel that this court has jurisdiction of the matter, because the appeal which was taken from the order appointing the receiver is void; the bond not having been given in double the amount in controversy. It is also claimed that there is no bond prescribed by the statute which will apply to an appeal from this order. Article 1383, Rev. St. 1895, provides: 'An appeal or writ of error may be taken to the Court of Civil Appeals from every final judgment of the district court in civil cases.' The order in question is a final judgment of the district court, from which an appeal might be taken under the provisions of the above-quoted article. If the statute prescribes no bond, then we are of the opinion that the court granting an appeal under this provision of the law might fix the amount of the bond adequate for the protection of the rights of the parties, which the court here did."

In Haley v. Walker (Tex. Civ. App.) 141 S. W. 166, it was held that a decree for perpetual injunction was stayed by the filing of a supersedeas bond in the sum of $500, which amount had been fixed by the court in the judgment.

In Ætna Club v. Jackson, 187 S. W. 971, the Court of Civil Appeals at El Paso granted a writ of mandamus compelling the trial court to fix the amount of the bond necessary to suspend the enforcement of the final judgment granting a perpetual injunction pending appeal therefrom. They followed the decision of our Supreme Court in Waters-Pierce Oil Co. v. State, supra; also cited Hill v. Halliburton, 32 Tex. Civ. App. 22, 73 S. W. 21, and note in 22 L. R. A. (N. S.) 316, in support of the holding that, where the statute prescribes no bond for appeal, it is proper and necessary for the court to fix one.

In Blackburn v. Bishop, 299 S. W. 264, the Court of Civil Appeals of Amarillo affirmed a judgment perpetuating an injunction, which injunction was suspended pending appeal by the filing of a bond in an amount required by the court, although it does not appear from the opinion of the court that the authority of the trial court to thus suspend operation of the injunction was questioned on the appeal.

The action of the trial court in decreeing that the appellants in the former suit would have the right to suspend the operation of the permanent injunction was equivalent to the rendition of a judgment for debt with stay of execution until the happening of some event; and it is our conclusion that the trial judge had authority to accomplish a similar result by requiring of appellants the bond that was executed by them, and also had authority to fix the amount of such bond; and it is to be noted here that the bond was not challenged on the appeal for insufficient amount.

In the case of Ford v. State, 209 S. W. 490, decided by the Court of Civil Appeals at Austin, it was held that an appeal from a final prohibitive injunction does not suspend the judgment, though a bond be given conforming in all respects to a supersedeas bond, and in that opinion the decision in Ætna Club v. Jackson, supra, was criticized. It appears from the opinion that the trial court granting the permanent injunction from which the appeal was prosecuted fixed the appeal bond at $5,000, which the appellant gave, but it does not appear from the report of the case that the trial court prescribed the conditions of the bond, nor that any order was entered by that court suspending the operation of

the permanent injunction pending the appeal if plaintiff should execute the bond, as was done in the original suit of Richardson against Clay and Bray. And for that reason we believe that that case is distinguishable from the present suit.

Appellants have cited Omaha Hotel Co. v. Kountze, 107 U. S. 378, 2 S. Ct. 911, 27 L. Ed. 609, to support their contention that the appeal bond in controversy cannot be construed as covering the damages sued for herein, but that the only liability thereon was for court costs and such damages, if any, as the appellate court could have assessed against the appellants in the former suit. The same case and such decisions as Landa v. Heermann, 85 Tex. 1, 19 S. W. 885, by our Supreme Court, and Russell v. Farley, 105 U. S. 433, 26 L. Ed. 1060, are likewise relied on to support the proposition advanced that the stipulation in the bond now under consideration that the signers thereof would pay "all such damages the said John Richardson, the plaintiff, may suffer," should be held to be surplusage, since that obligation was more onerous than was required by the statutes in order to suspend the operation of the injunction pending appeal.

It is our conclusion that that contention is without merit. As pointed out above, there is no statute which fixes the amount or condition of a bond necessary to suspend the operation of a permanent injunction granted upon the final trial of a case. And the bond filed was executed voluntarily by the signers thereof for the purpose of enabling Clay and Bray to continue the operation of the theater pending the appeal. Having received the full benefit of a suspension by executing the bond, they are in no position now to say that they are not bound by the plain provisions thereof, in the absence of any plea or showing of fraud, accident, or mistake inducing the execution of it. Furthermore, the damages here claimed could not have been proven in this court after the appeal of the former suit was perfected, and therefore could not have been awarded on that appeal. Manifestly, the appeal bond was valid as a common-law obligation and enforceable as such. Accordingly, we overrule all assignments of error challenging the legal sufficiency of the bond to bind the signers thereof according to its terms.

█ Upon the trial the plaintiff, John Richardson, was permitted to testify that, prior to the opening of the Palace Theater, his net income from the operation of the Princess Theater amounted to $400 a week, and that, pending the appeal in the former suit, during which time the Palace Theater was operated by Clay and Bray, the plaintiff's net profits from the operation of the Princess Theater amounted to only $200 a week, or a little less. The defendants objected to that testimony, on the ground that the plaintiff's books showing receipts and expenditures during the operation of the theater would be the best evidence. In order to lay a predicate for that testimony, plaintiff testified in answer to questions propounded by his counsel that his books had been turned over to Mr. Bowden for the purpose of enabling him to make out plaintiff's income tax report; that Mr. Bowden's office was in the city of Wichita Falls; and that he had kept the books among the records of his office. Thereupon the court ruled that the books would be the best evidence and sustained the objection to the testimony. The court then adjourned and on the following morning plaintiff testified that he had been to Mr. Bowden's office where he had made inquiry for his books and was told by Mr. Eads, in charge of the office, that he could not find them, but that Mr. Eads had shown him books of the office which contained a summary statement of the net profits realized by the plaintiff in the operation of his theater; such summary statement purporting to have been made up from the books themselves. Plaintiff then testified that he was able from memory to state the net profits realized by him from the operation of the theater during the times noted above, although he could not recall from memory the various items of expense incurred by him, all of which are shown in his books. And in his testimony from memory he could not fix any definite sum as his net profits, but approximated the same with the definite statement that they were not less than certain fixed sums named by him during the different weeks. The trial court ruled that a sufficient predicate had been laid for the introduction of such testimony over the renewed objection of defendants' counsel that there was an absence of such predicate therefor in that no sufficient reason had been given for the failure to produce plaintiff's books, and that at all events the books kept by Bowden showing the net profits would be the best evidence of such profits.

In 22 Corpus Juris, p. 980, it is said:

"Where written evidence of facts exist, the writing as a general rule constitutes the best evidence of that fact; and where the writing is not produced, parol evidence is inadmissible to prove its contents unless its absence is satisfactorily explained."

And on page 1049 of the same volume occurs the following:

"The fact of loss or destruction must, like any other fact, be proved by a fair preponderance of evidence and this is sufficient. The fact of loss or destruction must be shown with reasonable certainty, for it is unsafe to accept parol evidence of the contents of a writing whose loss is only vaguely accounted for."

Plaintiff's testimony to the effect that Eads, in charge of the office, told him he could not find the books, was hearsay, and even then the hearsay statement does not purport to

show what search Eads had really made, whether thorough or otherwise. It appears that Eads kept his office in Wichita Falls where the case was tried and in the absence of Mr. Bowden he had access to all the records in that office, and no reason was offered for the plaintiff's failure to subpoena Eads or Bowden and have their testimony as to whether or not plaintiff's books were then in the office, and, if not found, what search had been made for them. The testimony of plaintiff as to his net profits during the period mentioned was necessarily a conclusion of fact involving the difference between his expenditures and his receipts and was the very gist of the relief prayed for in his suit. If his books had been available, the proper method of proving his profits would have been to show the items of expense incurred by him and the daily receipts from the operation of his theater, leaving the jury to find the difference between those amounts. Of course, if it is impossible for him to prove up his case in that manner, then he could prove such profits in any other proper manner. We conclude that the court erred in overruling appellants' objection to the testimony above noted.

■ Plaintiff testified that he bought the Princess Theater in the spring of 1925, and that from that time up to the time Clay and Bray began to operate the Palace Theater his net income was $400 a week, and after the Palace Theater was opened his net income from the Princess dropped down from $200 to $175 a week, the witness designating the particular weeks in which there was a decrease in net profits. After testifying to such profits, counsel for defendants on cross-examination sought to elicit what disposition he had been making of all those profits and in that connection inquired if it was not a fact that he owed his father $10,000 for borrowed money; also what plaintiff had realized from the sale of the Queen Theater, which he had sold about a month before purchasing the Princess Theater; also if it was not a fact that, during the period when plaintiff claimed he was realizing a net profit of $400 a week from the operation of the Princess Theater, he had been sued for a divorce, and in response to an order of court had filed an inventory showing that he had no property except a house and lot valued at $3,000; a second-hand automobile valued at $1,000, incumbered by a debt of $300 or $400; that he had no cash on hand and owed a large sum of money, including a debt of $10,900 to his father; that, based on such showing, he had the court in the divorce suit allow his wife only $3,000 as her share of the community property of herself and plaintiff; and that plaintiff had borrowed that sum from his father in order to settle that allowance. Objection was urged by the plaintiff to those inquiries, on the ground that the same pertained to matters irrelevant and immaterial to any issue in the suit. That

objection was sustained and there was error in that ruling. It is a familiar rule that a wide latitude is permitted in cross-examinations, and if the facts indicated by the inquiries had been brought out, doubtless they would have tended to discredit the testimony of plaintiff as to the profits he claimed to have realized from the operation of the Princess Theater.

■ The proof showed that, after the rendition of the judgment by this court in the former case, J. T. Richardson, the father of plaintiff, purchased the lot on which the Palace Theater was situated, and Charles Richardson, brother of plaintiff, purchased the equipment situated therein, and that after such purchases the Palace Theater was operated in the names of John and Charles Richardson. The purchase made by J. T. Richardson was from the defendant Clay, who held title thereto and who owed thereon the sum of $6,500, secured by a lien on the property, in favor of one Campbell. Clay conveyed the property to J. T. Richardson after the latter had purchased Campbell's note and had instituted suit to foreclose the same. At the time Clay sold the property there was a second lien for the sum of $1,500 on the same property in favor of Sam Bird, which J. T. Richardson assumed, and which was afterwards bought by him through defendant Clay for the sum of $900. At the time Charles Richardson bought the equipment of the Palace Theater the same was incumbered by a lien in the sum of $5,000 in favor of one G. A. Deering, which Charles Richardson paid. The way that transaction was handled was that Clay made a bill of sale of the equipment to Deering and the latter conveyed the same to Charles Richardson. By the testimony of the witnesses Sam Bird and W. T. Clay, the defendants offered to prove that, at the time of the transaction in which Clay sold the property to J. T. Richardson, witness and J. T. Richardson and Charles Richardson were all present, and that, as one of the inducements to Clay for making the sale without any cash consideration to him, it was mutually agreed that he would procure from Sam Bird the sale of the second lien note for a consideration of $900, and that in consideration therefor the judgment in the former suit would be compromised and settled, and that acting upon that understanding Bird was induced to sell his said note at a discount, to wit, for the sum of $900. That testimony was offered after Clay had testified that the matter of settlement by compromise of the former judgment had been discussed by him with the plaintiff, John Richardson, and said Richardson had told him (Clay) whatever agreement his brother, Charles Richardson, and his father, J. T. Richardson, made with respect to the matter would be satisfactory to him. Objection to the testimony so offered on the ground that it was immaterial and ir-

418

relevant, and on the further ground of a lack of sufficient testimony to show that the father and son of plaintiff were his agents, was sustained. We believe there was error in that ruling. The jury had the right to believe the testimony of Clay with respect to the alleged statement by plaintiff, John Richardson, to Clay, and, if that statement was made by him, then it would follow necessarily that the same would constitute an admission that his father and brother were his agents to settle the former judgment by any compromise agreement they might see fit to make, since John Richardson alone was the party in whose favor the former judgment was rendered.

■ There is no merit in appellant's contention that it was incumbent upon the plaintiff to deny under oath the allegation of agency on the part of J. T. and Charles Richardson to act for John Richardson, since the defense did not rest upon any written contract of compromise executed by any of the parties.

■ We overrule the further contention of appellant that the profits claimed by plaintiff in the case were too speculative to support a recovery, since the testimony upon which a recovery was had showed a proper basis therefor from the operation of plaintiff's theater prior to the rendition of the judgment in the former suit. Furthermore, we believe that the sureties were liable for such profits to the same extent as the principals on the appeal bond, and we perceive no valid reason why the sureties should not be held liable to the same extent as the principals, since they were bound by the same terms of the bond.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded.

### On Motion for Rehearing.

Upon original hearing we overlooked a memorandum of authorities cited by appellants as a supplement to their briefs theretofore filed, and such of those authorities as are especially relied on we will now discuss. In Cigler v. Keinath, 265 Ill. 144, 106 N. E. 629, a judgment was sought against a surety on an appeal bond filed by the defendants in a suit against whom a judgment had been rendered for the possession of certain real property. The bond was conditioned that the appellants should prosecute their appeal with effect "and pay the costs and damages rendered, or to be hereafter rendered against them, in case said order shall be affirmed, in said appellate court." After the judgment was affirmed the plaintiffs in that suit instituted suit against a surety on the appeal bond to recover the court costs adjudged against the principals on the bond in the appellate court and also the sum of $534, the rental value of the property held by the defendants pending the appeal. The Supreme Court of Illinois held that, while the surety was liable for the court costs mentioned, he was not liable for the rents sued for, because, as concluded by the court, those rents were not covered by the terms of the bond. However, in the opinion in that case another decision by the same court in Shreffler v. Nadelhoffer, 133 Ill. 536, 25 N. E. 630, 23 Am. St. Rep. 626, was referred to and discussed with the conclusion that it was distinguishable from the case then being determined. In the former case it was held that the surety was liable on an appeal bond given to suspend the operation of a writ of injunction for damages sustained by the appellee pending the appeal from the decree granting the writ. The condition of that appeal bond was that the appellant "shall duly prosecute said appeal, and shall moreover pay all damages, and damages growing out of the continuance of the injunction herein, costs of suit rendered" and to be rendered against them, in case the decree should be affirmed by the appellate court.

German National Bank of Beatrice v. Beatrice Rapid Transit & Power Company was decided by the Supreme Court of Nebraska and the opinion appears in 69 Neb. 115, 95 N. W. 49, 5 Ann. Cas. 88. The following syllabus reflects the holding of the court in that case:

"In an action on a bond executed after judgment, and pending the transfer of the cause to this court by proceedings in error, conditioned that the obligors 'shall pay whatever judgment may be rendered by the court upon dismissal or trial of said appeal,' a petition which merely alleges that the original judgment of the lower court was affirmed, and is unpaid fails to state a breach of the bond."

We quote also the syllabus in Cole v. Edwards, by the Supreme Court of Iowa, reported in 104 Iowa, 373, 73 N. W. 863:

"Damages for defendant's continuing to practice his profession pending his appeal from a decree enjoining his further practice are not covered by the supersedeas bond, conditioned for payment of 'all costs and damages that shall be adjudged against said appellant in this appeal.'"

Those authorities all contain statements of the well-recognized rule that the liability of a surety on an appeal bond is to be determined by the strict letter of the bond. We believe that those authorities are clearly distinguishable from the present suit by reason of the fact that the conditions of the bonds there involved were, in our opinion, materially different from the bond in controversy in this suit. We believe that the appeal bond in the present suit is more nearly similar to the one involved in Welch v. Welch, 106 Ky. 406, 50 S. W. 687, in which the Court of Appeals of Kentucky held a surety on an appeal bond was liable for damages sustained by the appellee pending the appeal of the case. The condition of the bond in that case was:

"That the appellant will pay to the appellees all costs and damages that shall be adjudged against the appellant on the appeal and also that they will satisfy and perform the said judgment in case it shall be affirmed, * * * and also pay all damage which, during the pendency of the appeal, may accrue by reason of the appeal."

Of course, in that bond there was a specific separation of the damages that might be adjudged against the appellant upon appeal and the damages which the appellee might sustain during the pendency of an appeal, and we believe that the appeal bond in controversy in this suit is substantially to the same effect, since, following the express provision that appellants should "prosecute their appeal with effect and in case the judgment of the Supreme Court or the judgment of the Court of Civil Appeals shall be against them, they shall perform its judgment, sentence, or decree and pay all sums of money and costs which may be adjudged against them," there was a further stipulation that the obligors would also pay "all such damages which said John Richardson, plaintiff, may suffer." The judgment which was sustained was one granting an injunction restraining the operation of the Palace Theater in competition with another theater operated by the plaintiff. There was no basis for any judgment by the appellate court for damages or sums of money other than court costs, and the stipulation contained in the last clause of the bond binding appellants to also pay "such damages which said John Richardson may suffer" manifestly meant damages other than those which the appellate court could assess.

We believe further that on the question involved the bond in this suit is substantially to the same effect as that in Shreffler v. Nadelhoffer, 133 Ill. 536, 25 N. E. 630, 23 Am. St. Rep. 626, referred to above.

If the statutes had given appellants in the former suit the right to suspend the operation of the injunction by giving a supersedeas bond, and had prescribed the conditions of such a bond, and if, by the terms of those conditions the sureties were not bound for the damages here sought, then they would not be liable therefor, notwithstanding the stipulation in the bond filed, purporting to bind them for such damages. In that event it could be said that there being no consideration for such obligation, it would be construed as surplusage and unenforceable, under the doctrine announced in such authorities cited by appellants, as Ireland v. Taylor, 68 Tex. 159, 4 S. W. 65. However, no such case is presented here, since, as pointed out on original hearing, the right to suspend the appeal in the former suit was not given by statute, but solely by order of the trial court granting the injunction made upon request of appellants in that suit, who voluntarily prepared,

executed, and filed the appeal bond with all its conditions, and, by reason thereof, reaped the full benefits of the suspension of the writ of injunction pending the appeal.

■ It is true, of course, that the sureties on the bond in question could not in any event be held liable for more than the penal sum fixed by the bond, to wit, $2,000, and, if liable at all, they are entitled, of course, to a credit thereon for the $120 paid by them as costs of appeal of the former suit. We did not intend to hold otherwise. The statement in the concluding portion of our opinion on original hearing, which appellants have construed as a conclusion, that, if the principals on the bond in question are liable to plaintiff for the profits claimed, the sureties would also be liable for the same amount, was not intended to have the meaning, and it is therefore modified in such manner as to accord with the conclusion stated above.

With this modification of our original opinion, the motions of appellants and appellees for a rehearing are both overruled.